BERNARD GIPSON *v.* COMMISSIONER OF
CORRECTION
(AC 17745)

Lavery, Schaller and Cretella, Js.

Argued October 26, 1998—officially released August 10, 1999

*Michael L. Moscowitz*, special public defender, for the appellant (petitioner).

*Michele Lukban*, assistant state's attorney, with whom, on the brief, were *James Thomas*, state's attorney, and *Rosita Creamer*, assistant state's attorney, for the appellee (respondent).

*Opinion*

SCHALLER, J. The petitioner, Bernard Gipson, appeals from the habeas court's denial of his amended petition for a writ of habeas corpus. The petitioner claims that the habeas court improperly denied his amended petition because he was deprived of the effective assistance of appellate counsel when, following our

affirmance of his conviction, his attorney failed to file a petition for certification with our Supreme Court and neglected to inform him that he could file a pro se petition for certification. As a result, the petitioner claims that he was deprived of his only opportunity to seek review of our affirmance of his conviction. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to a resolution of this appeal. After a jury trial, the petitioner was convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3) and sentenced to fourteen years imprisonment, execution suspended after twelve years, and five years probation. The petitioner appealed to this court claiming that the trial court had improperly denied his motion to suppress a witness' pretrial identification. On May 16, 1995, we affirmed the judgment of conviction.[1]

On May 2, 1997, the petitioner filed an amended petition for a writ of habeas corpus, claiming that he was deprived of the effective assistance of appellate counsel in violation of the sixth and fourteenth amendments to the federal constitution. The petitioner alleged that appellate counsel failed to brief adequately the claims raised on direct appeal and neglected to file a petition for certification with our Supreme Court seeking discretionary review of this court's decision.

On October 17, 1997, following an evidentiary hearing, the habeas court denied the petitioner's amended petition for a writ of habeas corpus. On that same date, the habeas court granted the petitioner's petition for certification to appeal and his application for a waiver of fees, costs and expenses. Additional facts will be set forth where necessary.

---

[1] State v. Gipson, 37 Conn. App. 932, 657 A.2d 730 (1995) (per curiam).

As a threshold matter, we must determine whether the petitioner, as an indigent, was entitled to the assistance of appellate counsel in filing a petition for certification with our Supreme Court, seeking discretionary review of a final judgment from this court. The respondent contends that the petitioner's claim of ineffective assistance of appellate counsel, as well as the habeas court's decision, erroneously presupposes the existence of a right to counsel for discretionary state appeals. Specifically, the respondent claims that neither the federal constitution nor state statute provides the petitioner with a right to counsel in filing a petition for certification with our Supreme Court, seeking discretionary review. Because a claim of ineffective assistance of counsel must be predicated on an underlying right to the assistance of counsel; *Wainwright* v. *Torna*, 455 U.S. 586, 587–88, 102 S. Ct. 1300, 71 L. Ed. 2d 475 (1982) (per curiam); *Blakenship* v. *Johnson*, 118 F.3d 312, 316 (5th Cir. 1997); we must first determine whether the petitioner was entitled to the assistance of counsel.

I

The petitioner first claims that he has a federal constitutional right to the assistance of appellate counsel in pursuing a discretionary state appeal.[2] The respondent contends that precedent unequivocally establishes that the petitioner does not have a constitutional right to counsel in the present case. We agree with the respondent.

"Although there is no constitutional right of appeal; *Abney* v. *United States*, 431 U.S. 651, 656, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977); the right to appeal, once granted,

[2] The petitioner neither invokes the state constitution, nor provides an independent analysis under the state constitution. Accordingly, we limit our analysis of this claim to the protection afforded by the federal constitution. See *State* v. *Wright*, 246 Conn. 132, 138, 716 A.2d 870 (1998); *State* v. *Barnes*, 232 Conn. 740, 744 n.4, 657 A.2d 611 (1995).

invokes so significant a protection of liberty that it must be made available to all persons convicted of crimes. *Ross* v. *Moffitt,* 417 U.S. 600, 607, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Coppedge* v. *United States,* 369 U.S. 438, 441, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962) . . . . In the exercise of such a right, invidious discriminations, such as between rich and poor, implicate constitutional guaranties of due process and equal protection of the laws. *Douglas* v. *California,* 372 U.S. 353, 355, 83 S. Ct. 814, 9 L. Ed. 2d 811, reh. denied, 373 U.S. 905, 83 S. Ct. 1288, 10 L. Ed. 2d 200 (1963) . . . ." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Manson,* 194 Conn. 510, 515–16, 481 A.2d 1084 (1984).

In *Douglas* v. *California,* supra, 372 U.S. 356–58, the Supreme Court held that the fourteenth amendment to the federal constitution mandates that states provide counsel for indigents on their first appeal as of right. The court specified, however, that it was "dealing only with the first appeal, granted as a matter of right to rich and poor alike . . . . We need not now decide whether California would have to provide counsel for an indigent seeking a discretionary hearing from the California Supreme Court after the District Court of Appeal had sustained his conviction . . . ." Id., 356.

In *Ross* v. *Moffitt,* supra, 417 U.S. 603, an indigent received the assistance of counsel in appealing his conviction to the state's intermediate appellate court. After the intermediate appellate court affirmed the conviction, the state denied the indigent's request for counsel to assist him in petitioning the state Supreme Court for discretionary review. Id. The Supreme Court stated that "North Carolina has followed the mandate of *Douglas* v. *California,* supra, [372 U.S. 353], and authorized appointment of counsel for a convicted defendant appealing to the intermediate Court of Appeals, but has not gone beyond *Douglas* to provide for appointment of counsel for a defendant who seeks . . . discretionary

review in the Supreme Court of North Carolina . . . ."
*Ross* v. *Moffitt*, supra, 614. The court held that neither
the due process nor the equal protection clauses of the
fourteenth amendment required the state to provide
counsel for an indigent seeking discretionary review
before the state supreme court. Id., 610–12.

In the present case, in accordance with *Douglas* v.
*California*, supra, 372 U.S. 356–58, the petitioner
received the assistance of counsel in filing a direct
appeal with this court. The petitioner does not dispute
that our Supreme Court's review of his petition for
certification is discretionary. See General Statutes § 51-
197f;[3] Practice Book §§ 84-1[4] and 84-2.[5] The decision in

---

[3] General Statutes § 51-197f provides: "Upon final determination of any
appeal by the Appellate Court, there shall be no right to further review
except the Supreme Court shall have the power to certify cases for its
review upon petition by an aggrieved party or by the appellate panel which
heard the matter and upon the vote of three justices of the Supreme Court
so to certify and under such other rules as the justices of the Supreme Court
shall establish. The procedure on appeal from the Appellate Court to the
Supreme Court shall, except as otherwise provided, be in accordance with
the procedure provided by rule or law for the appeal of judgments rendered
by the Superior Court, unless modified by rule of the justices of the
Supreme Court."

[4] Practice Book § 84-1 provides: "An appeal may be taken to the supreme
court upon the final determination of an appeal in the appellate court where
the supreme court, upon petition of an aggrieved party, certifies the case
for review."

[5] Practice Book § 84-2 provides: "Certification by the supreme court on
petition by a party is not a matter of right but of sound judicial discretion
and will be allowed only where there are special and important reasons
therefor. The following, while neither controlling nor fully measuring the
court's discretion, indicate the character of the reasons which will be con-
sidered:

"(1) Where the appellate court has decided a question of substance not
theretofore determined by the supreme court or has decided it in a way
probably not in accord with applicable decisions of the supreme court.

"(2) Where the decision under review is in conflict with other decisions
of the appellate court.

"(3) Where the appellate court has so far departed from the accepted and
usual course of judicial proceedings, or so far sanctioned such a departure by
any other court, as to call for an exercise of the supreme court's supervision.

"(4) Where a question of great public importance is involved.

*Ross* establishes that the fourteenth amendment does not require Connecticut to provide the petitioner with the assistance of counsel in pursuing a discretionary state appeal.

In *Wainwright* v. *Torna,* supra, 455 U.S. 587–88, the Supreme Court held that because a defendant did not have a federal constitutional right to the assistance of counsel in pursuing a discretionary state appeal, he could not be deprived of the effective assistance of counsel when his attorney failed to file an application in a timely manner for discretionary review with the Florida Supreme Court. *Wainwright* establishes that a claim of ineffective assistance of counsel must be predicated on an underlying right to the assistance of counsel. Id.; *Blakenship* v. *Johnson,* supra, 118 F.3d 316. We conclude that because the petitioner has no federal constitutional right to counsel, he cannot be deprived of the effective assistance of counsel on constitutional grounds.

II

The petitioner next claims that he has a statutory right to counsel in filing a petition for certification with our Supreme Court.[6] The petitioner appears to argue, in essence, that the existence of his certification rights under § 51-197f and Practice Book § 84-1 confer a statutory right to appeal, which cannot be waived without his consent.[7] The petitioner apparently *presumes* the

---

"(5) Where the judges of the appellate panel are divided in their decision or, though concurring in the result, are unable to agree upon a common ground of decision."

[6] In *Ross* v. *Moffitt,* supra, 417 U.S. 618, although the Supreme Court held that an indigent did not have a constitutional right to counsel in pursuing a discretionary state appeal, it stated: "We do not mean by this opinion to in any way discourage those States which have, as a matter of legislative choice, made counsel available to convicted defendants at all stages of judicial review."

[7] We have noted that the right of appeal is essentially a statutory right and acquires its constitutional authority only in the sense that it exists within the framework of the guarantees of due process and equal protection. *Gaines*

existence of a right to counsel for assistance with the certification process. The respondent contends that, although Public Acts 1965, No. 178, § 1, which was codified in General Statutes § 54-81a (repealed by Public Acts 1974, No. 74-317, § 12), authorized public defenders to represent indigents in discretionary state appeals, the legislature demonstrated its intent not to require the providing of counsel for such appeals by eliminating that provision with the repeal of § 54-81a and the adoption of General Statutes § 51-296. We agree with the respondent's position. On the basis of our close analysis of § 51-296, in light of the pertinent legislative history, we are convinced that our legislature has not provided a statutory right to counsel for discretionary appeals since the adoption of § 51-296 in 1974, in which the right to counsel for discretionary appeals to our Supreme Court was eliminated. Given the legislature's action and the present language of § 51-296, we must conclude that the petitioner's claim has no merit.

In reaching our conclusion that § 51-296 does not provide the petitioner with the right to the assistance of counsel in filing a petition for certification with our Supreme Court, we rely on the language of § 51-296, the relationship of that statute to legislation that preceded it, the legislative history of § 51-296 and the relative purposes of discretionary appeals to our Supreme Court from judgments of the Appellate Court as opposed to appeals as of right to either court.

v. *Manson*, supra, 194 Conn. 515–16; *D'Amico* v. *Manson*, 193 Conn. 144, 147, 476 A.2d 543 (1984); *State* v. *Zukauskas*, 132 Conn. 450, 451 n.1, 45 A.2d 289 (1945). Because the legislature has created an appellate procedure, this avenue of redress "must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." (Internal quotation marks omitted.) *Gaines* v. *Manson*, supra, 516; see also *D'Amico* v. *Manson*, supra, 147. In order to comply with federal constitutional standards, as expressed by the United States Supreme Court, the state is not required to provide counsel for all stages of the appellate process as long as the procedure for meaningful appellate review is not impeded in an invidiously discriminatory manner. *Ross* v. *Moffitt*, supra, 417 U.S. 612. In this case, no claim of discrimination is asserted.

In interpreting statutes, our analysis is guided by well established principles of statutory construction. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Conway* v. *Wilton*, 238 Conn. 653, 663, 680 A.2d 242 (1996).

We look first to the words of the statute itself. *Rhodes* v. *Hartford*, 201 Conn. 89, 93, 513 A.2d 124 (1986). Section 51-296 (a) provides in relevant part: "In any criminal action, in any habeas corpus proceeding arising from a criminal matter, in any extradition proceeding, or in any delinquency matter, the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant . . . ." The text of § 51-296 does not mention appellate proceedings. Although a petition for certification to our Supreme Court clearly does not fall within the ambit of a habeas corpus proceeding, an extradition proceeding or a delinquency matter, it is unclear whether it falls within the meaning of "any criminal action."[8]

---

[8] Although § 51-296 does not discuss appellate proceedings, our Supreme Court has stated that an indigent has "the statutory right to competent trial counsel; *Aillon* v. *Meachum*, 211 Conn. 352, 559 A.2d 206 (1989); and appellate counsel; *Valeriano* v. *Bronson*, 209 Conn. 75, 546 A.2d 1380 (1988); *under § 51-296* . . . ." (Emphasis added.) *Lozada* v. *Warden*, 223 Conn. 834, 841, 613 A.2d 818 (1992). Our Supreme Court's reference to "appellate counsel" in *Lozada* and *Valeriano* was limited to a first appeal as of right. The issue of whether § 51-296 afforded an indigent the right to counsel in filing a petition for certification was not an issue before the court. The decision in *Valeriano* and the reference to appellate counsel in *Lozada*

Because the words "any criminal action" are not defined in § 51-296 or chapter 887, nor is the meaning of those words readily apparent from their context, and because the meaning of "any criminal action" is not apparent from precedent that has interpreted § 51-296, it is appropriate to ascertain the commonly approved meaning of those words. See General Statutes § 1-1 (a); *State* v. *Lubus*, 216 Conn. 402, 407, 581 A.2d 1045 (1990); *State* v. *Hopes*, 26 Conn. App. 367, 374, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). The "word 'any' in statutes is generally used in the sense of 'all' or 'every' and its meaning is comprehensive in scope and inclusive in range." *State* v. *Zueger*, 459 N.W.2d 235, 237 (N.D. 1990); see also *Barseback Kraft AB* v. *United States*, 121 F.3d 1475, 1481 (Fed. Cir. 1997); *Fleck* v. *KDI Sylvan Pools, Inc.*, 981 F.2d 107, 115 (3d Cir. 1992); *State* v. *Steenhoek*, 182 N.W.2d 377, 379 (Iowa 1970).

"[T]he word 'action' has no precise meaning and the scope of proceedings which will be included within the term . . . depends upon the nature and purpose of the particular statute in question." *Carbone* v. *Zoning Board of Appeals*, 126 Conn. 602, 605, 13 A.2d 462 (1940). It is apparent, however, that the term "action" as used in § 51-296 defines the *type* of proceedings in which counsel must be appointed, that is, one of the criteria for appointment, and not the *extent or scope* of practice of appointed counsel with respect to the various stages of the proceedings. We must, therefore, look to the historical nature and purpose of § 51-296

indicate simply that, although the text of § 51-296 does not explicitly incorporate the constitutional mandate of assistance of counsel in first appeals as of right; *Douglas* v. *California*, supra, 372 U.S. 356–58; *Ross* v. *Moffitt*, supra, 417 U.S. 610–12; *State* v. *Hudson*, 154 Conn. 631, 635 n.3, 228 A.2d 132 (1967); § 51-296 might well be interpreted in the future to reflect the right to counsel in first appeals. Such an interpretation would in no way lend support to an *expanded interpretation*, which extends the right to assistance of counsel to discretionary appeals beyond the first appeal as of right.

and its predecessor statutes to determine whether a petition for certification falls within the meaning of "any criminal action." This inquiry reveals clearly that no statutory right to counsel exists beyond the first appeal as of right.

Prior to 1965, counsel was provided for indigent defendants under limited circumstances in trial proceedings only, despite the existence of appellate review. From 1965 to 1974, the statutory right to counsel included representation in appeals to the Appellate Session of the trial court and on certification to the Supreme Court, in addition to trial proceedings. In 1974, the legislature eliminated all reference to a statutory right to counsel in appeals of any kind.

Connecticut "was the first state to adopt the public defender system." *State* v. *Hudson,* 154 Conn. 631, 635, 228 A.2d 132 (1967). Since at least 1917, the legislature has recognized an indigent's right, in limited circumstances, to the assistance of counsel. See Public Acts 1917, c. 225; *State* v. *Hudson,* supra, 635. Public Acts 1917, c. 225, § 1, required the judges of the Superior Court to appoint an attorney to act "in the defense of all persons charged with crime in said court when such person is without funds sufficient to employ counsel for such defense." In 1921, the legislature amended, as follows, the public defender statute to specify the courts before which they could appear: "Each such public defender shall act as attorney in the defense of any person charged with crime in either the superior court, the court of common pleas or the district court of Waterbury, in the county for which he is appointed, when such accused person is without funds sufficient to employ counsel for such defense." Public Acts 1921, c. 129, § 1.

In 1958, the text of General Statutes (1958 Rev.) § 54-80 provided in relevant part: "Each such public defender shall act as attorney in the defense of any person

charged with crime in either the superior court or the court of common pleas for the county for which he has been appointed, when such person is without funds sufficient to employ counsel for such defense. . . ."

In 1959, the legislature established the Circuit Court; Public Acts 1959, No. 28, § 1; and modified the scope of a public defender's representation. In Public Acts 1959, No. 28, § 13, which was codified at General Statutes (Sup. 1959) § 54-81a, the legislature first used the phrase "any criminal action." That act provided in relevant part: "In any criminal action in the circuit court, the judge before whom the matter is pending shall, if he determines that the interests of justice so require, appoint an attorney to act as special public defender and represent the defendant. . . ." Public Acts 1959, No. 28, § 13.

Although criminal defendants have had a statutory right to appeal since at least 1882; see *State* v. *Vaughan*, 71 Conn. 457, 460, 42 A. 640 (1899); the first statutory reference to an indigent's right to appellate counsel appeared in 1965. Public Acts 1965, No. 178, § 1, which amended § 54-81a, provided in relevant part: "In any criminal action in the circuit court, the judge before whom the matter is pending shall, if he determines that the interests of justice so require, designate the public defender for such circuit or an assistant public defender to represent the defendant. . . . The public defender or assistant public defender may, in the performance of his regular duties, appeal to the appellate division of the circuit court and, if certification is sought and granted, to the supreme court of errors. . . ." In 1967, the legislature amended § 54-81a to provide for representation of indigents in proceedings under writs of habeas corpus challenging extradition under the Uniform Criminal Extradition Act, General Statutes (Rev. to 1966) § 54-157 et seq. Public Acts 1967, No. 189.

In 1972, the legislature amended § 54-81a to reflect that the Appellate Division of the Court of Common Pleas had replaced the Appellate Division of the Circuit Court. Public Acts 1972, No. 281, § 23, which amended § 54-81a, provided in relevant part: "The public defender or assistant public defender may, in the performance of his regular duties, appeal to the appellate division of the court of common pleas and, if certification is sought and granted, to the supreme court. . . ." In 1974, the legislature amended § 54-81a to reflect that the Court of Common Pleas had assumed the jurisdiction and functions of the Circuit Court; Public Acts 1974, No. 74-183, §§ 5 and 7; and that the Appellate Session of the Superior Court had replaced the Appellate Division of the Court of Common Pleas. Public Acts 1974, No. 74-183, § 9. Public Acts 1974, No. 74-183, § 150, which amended § 54-81a, stated in relevant part: "In any criminal action in the court of common pleas, the judge before whom the matter is pending shall, if he determines that the interests of justice so require, designate a public defender or an assistant public defender to represent the defendant. . . . The public defender or assistant public defender may, in the performance of his regular duties, appeal to the superior court and, if certification is sought and granted, to the supreme court. . . ."

In 1974, the legislature repealed § 54-81a. Public Acts 1974, No. 74-317, § 12 (P.A. 74-317). Public Act 74-317, § 7, was codified at General Statutes (Rev. to 1975) § 51-296, and, as enacted, it provided in relevant part: "*(a) In any criminal action,* in any habeas corpus proceeding arising from a criminal matter, in any extradition proceeding, or in any juvenile court matter, the court before which the matter is pending shall, if it determines, after investigation by the public defender or his office, that a defendant is indigent, as defined under this act, designate a public defender or assistant public defender to

represent such indigent defendant . . . ." (Emphasis added.) As enacted, § 51-296 did not mention appellate proceedings and, despite minor amendments, which are unimportant for purposes of this discussion, the text of § 51-296 remains unchanged. The legislative history of the adoption of § 51-296 contains no discussion concerning the elimination of the provision authorizing public defenders to pursue discretionary appeals to our Supreme Court. See 17 H.R. Proc., Pt. 10, 1974 Sess., pp. 4839–43; 17 S. Proc., Pt. 6, 1974 Spec. Sess., pp. 2262–65, 2270–71; Conn. Joint Standing Committee Hearings, Judiciary, 1974 Sess., pp. 221:1–221:3, 221:15–221:20, 221:36–221:37, 221:56, 221:57, 221:65, 221:76–221:77, 221:96–221:100, 221:106–221:107.

We are persuaded that, because the legislature repealed § 54-81a, and did not indicate in the text or the legislative history of P.A. 74-317, § 7, as codified in § 51-296, that an indigent defendant is entitled to the assistance of counsel in a discretionary appeal, the petitioner has no statutory right to the assistance of counsel in the present case. Given the language of § 51-296, we conclude, in fact, that the express repeal of § 54-81a in the same public act that enacted § 51-296 demonstrates a clear legislative intent to eliminate the provisions of § 54-81a and to replace them with those of § 51-296. "Where the repeal is clearly stated, the courts have no responsibility or authority but to follow and apply the legislative will as expressed." 1A J. Sutherland, Statutory Construction (5th Ed. Singer 1993) § 23.07, p. 332. Moreover, "[u]nder common-law principles all rights, liabilities, penalties, forfeitures and offenses which are of purely statutory derivation and unknown to the common law are eliminated by the repeal of the statute which granted them, irrespective of the time of their accrual." Id., § 23.33, p. 424–25. Because § 51-296 does not explicitly provide for representation in certification proceedings before our Supreme Court, the repeal of

§ 54-81a must be construed to express the legislative intent not to provide counsel in situations beyond those in which counsel is *constitutionally* required. See *Douglas* v. *California,* supra, 372 U.S. 353; *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). The text of § 51-296 has remained unchanged to this day. We are unable to construe § 51-296 in any other way, given the clearly demonstrated legislative intent in the simultaneous repeal of § 54-81a and adoption of § 51-296 in the same public act.[9] "In areas where

---

[9] The concurring opinion suggests a variety of policy arguments that operate in favor of extending § 51-296 to provide for counsel in discretionary appeals. Although we recognize the merits of some of those arguments, we maintain that they should be considered in the *legislative forum.* The appropriate exercise of judicial restraint compels us not to misread the language of the statute to achieve policy objectives conceived in the *judicial forum. As the concurrence notes appropriately,* "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Conway* v. *Wilton,* supra, 238 Conn. 663. If the legislature wants to expand the statutory rights to counsel beyond what it has presently expressed, it is well aware of how to use language to express its intent. "The intent of the legislature is to be found in the meaning of the words of the statute; that is, in what the legislature actually *did* say, not in what it *meant* to say." (Emphasis in original.) *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981); see also *State* v. *Ingram,* 43 Conn. App. 801, 819, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997).

The concurring opinion offers four numbered and several additional arguments in favor of an expanded interpretation of the words "any criminal action" to include counsel in discretionary appeals. The concurrence contends, first, that if the legislature had intended to limit the scope of P.A. 74-317, § 7, to encompass only counsel in trial proceedings, the legislature logically would have qualified the phrase "[i]n any criminal action" by referring to the trial court. While the legislature did not explain why it did not use limiting language in P.A. 74-317, § 7, whereas it had previously referred to the Circuit Court and the Court of Common Pleas, there is no basis on which to speculate that it meant thereby to include discretionary appeals when, in fact, it eliminated the reference to appeals.

The concurring opinion argues, secondly, that the legislature did not explain why it repealed the portion of § 54-81a that had authorized the appointment of counsel in appeals, both to the Appellate Session and to the Supreme Court. The concurrence contends, in essence, that its silence should lead this court to give a new, broadened meaning to the phrase "in any criminal action," that is, to interpret it to encompass the appellate rights

the legislature has spoken . . . the primary responsibility for formulating public policy must remain with

eliminated by the repeal of § 54-81a. While there is *every* good reason to presume that the legislature took into account the constitutional requirements imposed by the United States Supreme Court in *Douglas* v. *California*, supra, 372 U.S. 353, and *Ross* v. *Moffitt*, supra, 417 U.S. 600, there is *no* good reason to interpret the legislature's action as intended to accomplish exactly the opposite of what it did.

Third, the concurrence asserts that our interpretation undermines the legislature's intent to provide effective services in the criminal sphere for indigent people, while its policy position effectuates that intent. Unquestionably, indigent people accused of crime will have their rights enhanced if public defenders are required to be provided for discretionary appeals. The legislature obviously is capable of expressing its own intent with regard to providing counsel. If it wants to extend those rights to discretionary appeals, it is quite capable of doing so plainly and unmistakably. Counsel is already provided for first appeals as of right. If the legislature wants to extend the right of counsel beyond the federal constitutional requirements, it is free to do so whenever it chooses. It has not chosen to do so for some twenty-five years. In the interim, we note that this intermediate appellate court was created to replace the series of appellate divisions and sessions of the various trial courts. Conn. Const., amend. XX; Public Acts, Spec. Sess., June, 1983, No. 83-29. In the creation of this court, litigants were provided with a first appeal as of right to an appellate court which is separate from and independent of the trial courts. In 1985 and thereafter, the legislature has declined to extend public defender services beyond the appeal to this court or to the Supreme Court, in cases in which it is designated to hear first appeals as of right. See General Statutes § 51-199 (as revised by Public Acts 1997, No. 97-178). The concurring opinion's circular arguments are premised on its own version of § 51-296. The legislative history cited by the concurrence, consisting of Senator Scalo's remarks on a different section of what later became P.A. 74-317, is not relevant and probative with respect to the issue before this court.

Fourth, the concurrence argues that its "broad interpretation" of § 51-296 derives support from precedent that has adopted an expansive interpretation of the statute in habeas corpus proceedings. The concurrence appears to assert that Connecticut's broad and expansive policy with respect to the provision of counsel for indigents in habeas matters should lead us to create a still broader and more expansive policy than the statutory language dictates, in the absence of legislative authority to do so. In fact, the interpretation of the statute in habeas proceedings follows from the specific language used by the legislature in § 51-296. In referring to counsel in habeas proceedings, the legislature used broad language, "in any habeas corpus proceeding arising from a criminal matter . . . ." It is not the expansive judicial interpretation but, rather, the broad legislative language, that has produced the rights to counsel in habeas proceedings. See *Lozada* v. *Warden*, supra, 223 Conn. 834 (statutory right to counsel in habeas hearings); see also *Iovieno*

the legislature." *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987). "It is not the function of courts to

v. *Commissioner of Correction*, 242 Conn. 689, 701–702, 699 A.2d 1003 (1997); *Franko* v. *Bronson*, 19 Conn. App. 686, 692, 563 A.2d 1036 (1989) (statutory right to counsel in habeas appeals).

The concurrence argues further that rights to counsel should be extended to discretionary appeals because the certification process is technical and difficult and because review by our Supreme Court is significant. This matter is patently and unquestionably an issue for the legislature to consider in the exercise of its broad authority in such matters and its competence in weighing and providing for the adoption of its policy choices. To extend the statute in this case "would be inconsistent with the legislative policy of the statute by affording more protection . . . than the statutory scheme was designed to afford." *Bhinder* v. *Sun Co.*, 246 Conn. 223, 244, 717 A.2d 202 (1998) (*Borden, J.*, dissenting). Since the legislature chose to eliminate all reference to appeal rights, we see no reason to infer that the legislature meant to extend those rights beyond those that are constitutionally required. To interpret the language of § 51-296, or more appropriately the silence therein, in order to produce a result contrary to the text of the statute is to engage in the sheerest of speculation. We are not free to give the statute the construction that furthers our own policy objectives. Rather, we must read the statute faithfully to ascertain the meaning of what the legislature has expressed.

Finally, the concurrence contends that we have failed to "explain adequately the impact [our] construction of § 51-296 will have on the present practice of the office of public defender in representing indigent defendants in filing petitions for certification or oppositions to the state's petitions for certification." The concurring opinion takes judicial notice of public defender and special public defender appearances in petitions for certification in 1998 and 1999. We note that the parties did not address the "present practice of the office of public defender" in these matters and we are not able to conclude what that practice is from the judicially noticed statistics. Lacking such knowledge, we are certainly not in a position to explain the impact on "the present practice." Presumably, the public defender's office undertakes such matters now as a matter of discretion, recognizing that it is not required to do so. Our decision concludes only that such representation is not required, but neither is it prohibited. If representation were to be required in discretionary appeals, there might well be a substantial impact on the public defender's office. It would be shortsighted, in this regard, not to consider that there may well be serious economic ramifications to be weighed in making such policy decisions. In plain terms, a decision to require appointed counsel to handle petitions for certification and discretionary appeals has an economic cost. The results of that policy, once enacted, would detract from the resources available for legal services to other indigent accuseds. The judiciary is not in a position to make such decisions or to provide for the additional resources that would be needed to finance the expanded services. Those issues are for our legislature to consider in its

read into clearly expressed legislation provisions which do not find expression in the words . . . ." (Internal quotation marks omitted.) Id., quoting *Mozzochi* v. *Glastonbury*, 188 Conn. 276, 279, 449 A.2d 173 (1982).

Our conclusion is fortified by consideration of the relative function of discretionary appeals to our Supreme Court, as contrasted with the function of first appeals as of right. In this regard, Practice Book § 84-2 explicitly provides factors to be considered by our Supreme Court in deciding whether to grant certification. See footnote 5. Those factors do not focus on the accuracy of the conviction but, rather, on matters affecting the consistency and authority of the law, the public importance of the question and the need for supervisory review. Moreover, the granting or denial of certification indicates neither approval nor disapproval of the Appellate Court's decision. *State* v. *Cullum*, 149 Conn. 728, 729–30, 176 A.2d 587 (1961); see also *State* v. *Ellis*, 224 Conn. 711, 722, 621 A.2d 250 (1993) (certification process enables Supreme Court to limit consideration to "appropriate issue[s], without the necessity of also considering issues that do not warrant review by this court").

The procedure for certification reveals, therefore, that when our Supreme Court exercises discretionary review, its function is fundamentally different from the process of review by the Appellate Court. Although fundamental fairness is *always* a paramount concern in our judicial system, the factors enumerated in § 84-2 suggest that when our Supreme Court exercises its

deliberative wisdom, not to be mandated into existence by judicial fiat. The expansive view of § 51-296 urged by the concurrence might well drastically affect the functioning of the public defender system and seriously deplete the resources available to public defenders functioning at trial and first appeal stages. The impact on the system, as well as on individual defendants, could be devastating. Evaluation of the various policy implications is for the legislature.

discretionary review authority, its *focus* is on matters of public policy and the supervision of our judicial system, rather than solely on the correctness of a particular criminal conviction. The Appellate Court serves the principal function of reviewing the trial court's judgment and orders to ensure that only valid convictions stand. *Evitts* v. *Lucey*, 469 U.S. 387, 399–400, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). Although discretionary review by our Supreme Court plays a vital role in our judicial system, it, by no means, focuses primarily on the determination of guilt or innocence. The context in which discretionary appeals exist explains why the right to counsel in discretionary appeals, following the first appellate review of the judgment, is treated differently by the legislature.[10]

---

[10] The legislative history relating to the creation of the Appellate Session of the Superior Court, reveals that the purpose of that session was to create time for our Supreme Court to focus on developing and maintaining the consistency of the law of the state. The statement by Joseph Keefe, executive secretary of the judicial branch, in support of the Appellate Session bill from the Judiciary Committee first notes the dramatic increase in the caseload of our Supreme Court and counsels that "[a]ny solution to the problem of an overburdened Supreme Court must reflect three important principles: (1) that the primary function of a state supreme court is to develop and maintain the consistency of the law of the state; (2) that a one-tier trial court system was enacted to provide equal justice to all citizens in our state; and (3) that the right to appeal is not absolute but may be conditioned by the state as long as the essential elements of an opportunity to be heard are provided." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1977 Sess., p. 1093. The statement further notes that because cases that do not raise substantial questions of law will be reviewed by the Appellate Court, and Supreme Court review will exist only by certification, "the appellate session will serve to preserve the integrity of the Supreme Court as the prime source for developing law for general application throughout the legal system." Id., p. 1094.

In 1983, the legislature implemented article fifth, §§ 1 and 2, of the constitution of Connecticut, as amended by article twenty of the amendments, creating this intermediate Appellate Court to replace the series of appellate divisions of the various trial courts. Public Acts, Spec. Sess., June, 1983, No. 83-29. A review of the legislative history also reveals essentially the same purposes relating to the creation of the Appellate Court as those creating the Appellate Session of the Superior Court. 26 S. Proc., Pt. 16,

In addition, it should be noted that Connecticut provides a statutory right to habeas counsel, which further serves to protect the interest of an individual who is convicted of a crime. General Statutes § 51-296 (a). The principal purpose of the writ of habeas corpus "is to serve as a bulwark against convictions that violate fundamental fairness." (Internal quotation marks omitted.) *Lozada* v. *Warden*, 223 Conn. 834, 840, 613 A.2d 818 (1992). Defendants in this state, therefore, have the right to counsel in proceedings that exist specifically to ensure that the individual's conviction was correct and proper; at trial, on a first appeal as of right and on a writ of habeas corpus.

June 1983 Spec. Sess., pp. 796–97; 26 H.R. Proc., Pt. 31, June 1983 Spec. Sess., p. 1397. In commenting on House Bill 8010, which became Public Acts, Spec. Sess., June, 1983, No. 83-29, Representative Richard Tulisano stated: "[The creation of the Appellate Court] would . . . loosen up the backlog in the Supreme Court giving them an opportunity to address issues of statewide importance and develop . . . statewide interpretation of the law . . . giving detailed and deep analysis to those cases which are of importance to the general public." 26 H.R. Proc., supra, p. 1397.

In 1997, the legislature amended General Statutes § 51-199 in response to the current practice of our Supreme Court in exercising its discretion by transferring cases to the Appellate Court. Public Acts 1997, No. 97-178 § 2 amended § 51-199 (b) (3) by eliminating class A felonies, and other felonies for which the maximum sentence that could be imposed exceeded twenty years, from the category of cases in which a defendant could appeal directly to our Supreme Court. We note, however, that in 1998, the legislature subsequently repealed Public Acts 1997, No. 97-178, § 2, thereby permitting a defendant, who is convicted of a class A felony or other felony for which the maximum sentence that may be imposed exceeds twenty years, to once again appeal directly to our Supreme Court. Public Acts 1998, No. 98-81, § 5. The testimony of Melissa A. Farley, a representative of the Judicial Branch, reveals that our Supreme Court transfers to the Appellate Court approximately two-thirds of the cases filed directly with our Supreme Court. Farley further stated that the purpose of the amendment was to increase efficiency in the clerk's office. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 9, 1997 Sess., pp. 2795–96, 2909–10; see also 40 S. Proc., Pt. 7, 1997 Sess., pp. 2309–10. By this discretionary action, the Supreme Court itself exercised its discretion to determine which cases were appropriate for its review. The legislature further defined the jurisdiction of the courts to provide that only those cases meriting Supreme Court review would be filed directly with that court.

The petitioner's reliance on Practice Book § 43-30[11] and case law pertaining to the first appeal as of right ignores the distinct functions of the first review and discretionary review. Moreover, the rules of practice cannot enlarge or modify any substantive right. General Statutes § 51-14; *State* v. *Ellis*, supra, 224 Conn. 721. Practice Book § 43-30 reflects nothing more than the law as developed in *Douglas* v. *California*, supra, 372 U.S. 335, and *Ross* v. *Moffitt*, supra, 417 U.S. 600, and as recently reiterated by our Supreme Court in *Washington* v. *Meachum*, 238 Conn. 692, 680 A.2d 262 (1996). See Practice Book § 44-2. For at least the past twenty years, without deviation, our Supreme Court has recognized that criminal defendants "have a right to counsel throughout the pendency of criminal proceedings against them in the trial court; *Gideon* v. *Wainwright*, [supra, 372 U.S. 335]; *Argersinger* v. *Hamlin*, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972); and during the pendency of appeals as of right. *Douglas* v. *California*, [supra, 353]." *Washington* v. *Meachum*, supra, 731; see also *Paulsen* v. *Manson*, 193 Conn. 333, 338, 476 A.2d 1057 (1984). The petitioner has failed to persuade us of any good reason to alter this state of the law. All of the factors that we have discussed militate against an expansive reading of § 51-296 that would extend, by judicial fiat, the right to counsel in discretionary appeals. Because it is the legislature that is primarily responsible for formulating public policy, in areas where the legislature has spoken, "[i]t is not the function of courts to read into clearly expressed legislation

---

[11] Practice Book § 43-30 provides in relevant part: "Where there has been a conviction after a trial, or where there has been an adverse decision upon an application for a writ of habeas corpus brought by or on behalf of one who has been convicted of a crime, it shall be the duty of the clerk of the court . . . to advise the defendant . . . of such rights as such defendant may have to an appeal . . . and of the right of an indigent person who is unable to pay the cost of an appeal to apply for . . . the appointment of counsel to prosecute the appeal."

provisions which do not find expression in the words
. . . ." (Internal quotation marks omitted.) *State* v.
*Whiteman,* supra, 204 Conn. 103. "[E]very statute has
some boundaries, and the question then arises whether,
and when, it is appropriate to apply the statute . . .
beyond its designated boundaries." (Internal quotation
marks omitted.) *Williams Ford, Inc.* v. *Hartford
Courant Co.*, 232 Conn. 559, 585, 657 A.2d 212 (1995),
quoting E. Peters, "Common Law Judging in a Statutory
World: An Address," 43 U. Pitt. L. Rev. 995, 1005 (1982).
We are compelled to conclude that the court should not
in this instance extend the statute beyond its boundary.

For the foregoing reasons, we conclude that a petition
for certification does not fall within the ambit of § 51-
296's reference to "any criminal action" and, therefore,
the petitioner has no statutory right to the assistance
of counsel in filing a petition for certification with our
Supreme Court, seeking discretionary review of a final
judgment of this court.[12]

The judgment is affirmed.

In this opinion CRETELLA, J., concurred.

LAVERY, J., concurring. Although I respectfully dis-
agree with the conclusion reached in part II of the
majority opinion, I would affirm the decision of the
habeas court because each of the petitioner's claims is
without merit.

Although in *Ross* v. *Moffitt,* 417 U.S. 600, 618, 94 S.
Ct. 2437, 41 L. Ed. 2d 341 (1974), the United States
Supreme Court held that an indigent defendant did not

---

[12] In light of our conclusion that the petitioner has neither a constitutional
nor a statutory right to counsel in discretionary appeals, we need not address
whether the petitioner was deprived of the effective assistance of appellate
counsel in this case. We note, however, that, were we to review that issue,
we would agree with the reasoning and the conclusion of the concurring
opinion, based on the record in this case, that the petitioner failed to establish
that he was deprived of the effective assistance of counsel.

have a constitutional right to court-appointed counsel in pursuing a discretionary state appeal, it stated: "We do not mean by this opinion to in any way discourage those States which have, as a matter of legislative choice, made counsel available to convicted defendants at all stages of judicial review." See, e.g., *Hernandez* v. *State*, 127 Idaho 685, 687, 905 P.2d 86 (1995) (statutory right to counsel in discretionary state appeals); *Dodson* v. *Director, Dept. of Corrections*, 233 Va. 303, 306, 355 S.E.2d 573 (1987) (same). On the basis of a careful consideration of the text of General Statutes § 51-296, its relationship to legislation that preceded it, its legislative history and precedent interpreting the scope of this statute in habeas corpus proceedings, I would conclude that § 51-296 provides an indigent defendant[1] with a statutory right to the assistance of counsel in filing a petition for certification with our Supreme Court, seeking discretionary review of a decision from this court.

"When we engage in statutory interpretation, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) *State* v.

[1] General Statutes § 51-297 (f) provides: "As used in this chapter 'indigent defendant' means (1) a person who is formally charged with the commission of a crime punishable by imprisonment and who does not have the financial ability at the time of his request for representation to secure competent legal representation and to provide other necessary expenses of legal representation and (2) a child who has a right to counsel under the provisions of subsection (a) of section 46b-135 and who does not have the financial ability at the time of his request for representation to secure competent legal representation and to provide other necessary expenses of legal representation."

*Spears*, 234 Conn. 78, 86–87, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995). "We have long followed the guideline that [t]he intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute." (Internal quotation marks omitted.) *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 462, 704 A.2d 222 (1997).

General Statutes § 51-296 (a) provides in relevant part: "In any criminal action, in any habeas corpus proceeding arising from a criminal matter, in any extradition proceeding, or in any delinquency matter, the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant . . . ." While a petition for certification does not fall within the ambit of a habeas corpus proceeding, an extradition proceeding or a delinquency matter, the majority concedes that "it is unclear whether it falls within the meaning of § 51-296's reference to 'any criminal action.' "

Because the words "[i]n any criminal action" are not defined in § 51-296 or chapter 887, nor is the meaning of those words apparent from their context, it is appropriate to look for guidance to precedent that has interpreted § 51-296. Although the text of § 51-296 does not explicitly discuss appellate proceedings, our Supreme Court has stated that an indigent defendant has "the statutory right to competent trial counsel; *Aillon* v. *Meachum*, 211 Conn. 352, 559 A.2d 206 (1989); and appellate counsel; *Valeriano* v. *Bronson*, 209 Conn. 75, 546 A.2d 1380 (1988); *under § 51-296* . . . ." (Emphasis added.) *Lozada* v. *Warden*, 223 Conn. 834, 841, 613 A.2d 818

(1992). *Lozada*'s reference to appellate counsel was limited to a first appeal as of right, and the issue of whether § 51-296 afforded an indigent defendant a statutory right to counsel in filing a petition for certification was not before the Supreme Court. Nonetheless, at a minimum, *Lozada* reflects that our Supreme Court has adopted a broad construction of § 51-296 and that the *text* of this statute extends the right to counsel beyond the trial stage to include a first appeal as of right.[2]

Because the meaning of "[i]n any criminal action" is neither apparent from its context nor from precedent

[2] To support its interpretation that "[i]n any criminal action" in § 51-296 is limited to trial proceedings, the majority concludes that the *Lozada* court read into the text of § 51-296 the constitutional mandate of assistance of counsel in first appeals as of right and, therefore, *Lozada* cannot be used to support a broad construction of § 51-296. The majority does not, however, provide any authority to support its explanation that the court in *Lozada* was required to read into the text of § 51-296 a constitutional mandate that exists independent of § 51-296. The basis for an indigent's right to the assistance of counsel in a first appeal as of right is the federal constitution. See *Douglas* v. *California*, 372 U.S. 353, 356–58, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963). Because this right to counsel exists independent of § 51-296, it is unclear why a court must read this requirement into the statute.

Precedent establishes that "[i]n endeavoring to interpret the language of [a statute], we must take account of our duty, when presented with a constitutional challenge to a validly enacted statute, to construe the statute, if possible, to comport with the constitution's requirements." *Rules Committee of the Superior Court* v. *Freedom of Information Commission*, 192 Conn. 234, 240, 472 A.2d 9 (1984); see *State* v. *Wilchinski*, 242 Conn. 211, 220, 700 A.2d 1 (1997) ("[c]ourts have both the power and the duty to interpret statutes so as to preserve their constitutionality when such an interpretation is possible"). Because the *Lozada* court was neither confronted with a constitutional challenge to § 51-296, nor did it detect a constitutional infirmity, it is unclear why the Supreme Court would be required to read a federal constitutional mandate into the text of § 51-296. If, as the majority claims, § 51-296 is silent concerning the right to counsel in first appeals as of right, an indigent is still entitled to this right because it is secured by the federal constitution. See *Douglas* v. *California*, supra, 372 U.S. 356–58. As the following discussion will demonstrate, however, there is no need to read this constitutional mandate into § 51-296 because several factors suggest that § 51-296's reference to "[i]n any criminal action" encompasses the successive stages of a criminal action, which include trial, first appeal as of right and discretionary appeal to the Supreme Court.

that has interpreted § 51-296, it is appropriate to examine the commonly approved meaning of those words. See *State* v. *Woods*, 234 Conn. 301, 309, 662 A.2d 732 (1995). Although our Supreme Court has stated that "the word 'action' has no precise meaning and the scope of proceedings which will be included within the term as used in . . . statutes depends upon the nature and purpose of the particular statute in question"; *Carbone* v. *Zoning Board of Appeals*, 126 Conn. 602, 605, 13 A.2d 462 (1940); *Fishman* v. *Middlesex Mutual Assurance Co.*, 4 Conn. App. 339, 344, 494 A.2d 606 (1985); *State* v. *Magnota*, 1 Conn. Cir. Ct. 151, 152, 177 A.2d 515 (1961); it has also stated that "[i]n a general sense the word 'action' means the lawful demand of one's right in a court of justice; and in this sense may be said to include any proceeding in such a court for the purpose of obtaining such redress as the law provides." (Internal quotation marks omitted.) *In re Investigation of the Grand Juror*, 188 Conn. 601, 606, 452 A.2d 935 (1982); *Waterbury Blank Book Mfg. Co.* v. *Hurlburt*, 73 Conn. 715, 717, 49 A. 198 (1901). Because this case presents a question of statutory interpretation, it is appropriate to utilize the approach set forth in *Carbone* by looking to the nature and purpose of § 51-296 to determine whether a discretionary appeal falls within the ambit of this statute.[3]

To appreciate fully the nature and purpose of § 51-296, it is necessary to briefly review its statutory genealogy. The legislature first used the phrase "[i]n any criminal action" in Public Acts 1959, No. 28, § 13, which was

[3] In several instances, after examining the particular statute in question, courts have determined that an "action" also included appellate proceedings. See *Mulcahy* v. *Mulcahy*, 84 Conn. 659, 663, 81 A. 242 (1911) (appeal from decision of Probate Court to trial court constituted "action" within meaning of General Statutes § 705); *Ment* v. *Ives*, 27 Conn. Sup. 239, 243, 235 A.2d 330 (1967) (appeal from decision of highway commissioner to trial court constituted "action" within meaning of Practice Book § 167); see also *McCabe* v. *Atkinson*, 15 Conn. Sup. 307, 308 (1948).

codified as General Statutes § 54-81a. That act provided in relevant part: "In any criminal action in the circuit court, the judge before whom the matter is pending shall, if he determines that the interests of justice so require, appoint an attorney to act as special public defender and represent the defendant. . . ." Public Acts 1959, No. 28, § 13. The first statutory reference to appellate counsel appeared in 1965. Public Acts 1965, No. 178, § 1, which was codified in General Statutes § 54-81a, provided in relevant part: "In any criminal action in the circuit court, the judge before whom the matter is pending shall, if he determines that the interests of justice so require, designate the public defender for such circuit or an assistant public defender to represent the defendant. . . . The public defender or assistant public defender may, in the performance of his regular duties, appeal to the appellate division of the circuit court and, if certification is sought and granted, to the supreme court of errors."

In hearings before the Judiciary Committee, Arthur Lewis, chairman of the committee on administration of criminal justice for the Connecticut Bar Association, stated that with the passage of Senate Bill No. 233, which became Public Acts 1965, No. 178, a "public defender can appeal the case to the Appellate Division and to the Supreme Court should the case go [that far]." Conn. Joint Standing Committee Hearings, Judiciary, 1965 Sess., p. 142. In discussing the changes brought about by the passage of Public Acts 1965, No. 178, the Appellate Division of the Circuit Court observed that Public Acts 1959, No. 28, § 13 "was repealed and replaced by more liberal and more comprehensive provisions . . . ." *State* v. *DeJoseph*, 3 Conn. Cir. Ct. 624, 633, 222 A.2d 752, cert. denied, 385 U.S. 982, 87 S. Ct. 526, 17 L. Ed. 2d 443 (1966). In *State* v. *Clark*, 4 Conn. Cir. Ct. 570, 572–73, 237 A.2d 105 (1967), the Appellate Division of the Circuit Court stated that "[o]ur public

defender system safeguards the rights of indigent persons not only at the trial level but also on appeals, as is set forth in § 54-81a of the General Statutes, [which was amended by Public Acts 1965, No. 178, § 1, effective June 15, 1965.] Under it, an accused who lacks funds is assured of representation by an experienced counsel who, subject to the court's approval, are able to incur whatever expense is necessary for the proper protection of the rights of the accused, not only in the trial court but also on appeal."

Public Acts 1972, No. 281, § 23, which was codified in § 54-81a, provided in relevant part: "The public defender or assistant public defender may, in the performance of his regular duties appeal to the appellate division of the court of common pleas and, if certification is sought and granted, to the supreme court. . . ." Public Acts 1974, No. 74-183, § 150 (P.A. 74-183), which was codified in § 54-81a, provided in relevant part: "In any criminal action in the court of common pleas, the judge before whom the matter is pending shall, if he determines that the interests of justice so require, designate a public defender or an assistant public defender to represent the defendant. . . . The public defender or assistant public defender may, in the performance of his regular duties, appeal to the superior court and, if certification is sought and granted, to the supreme court. . . ."

In 1974, the legislature repealed § 54-81a, effective October 1, 1975. Public Acts 1974, No. 74-317, § 12 (P.A. 74-317). Public Act 74-317, § 7, was codified as General Statutes § 51-296 and, as enacted, it provided: "In any criminal action, in any habeas corpus proceeding arising from a criminal matter, in any extradition proceeding, or in any juvenile court matter, the court before which the matter is pending shall, if it determines, after investigation by the public defender or his office, that

a defendant is indigent, as defined under this act, designate a public defender or assistant public defender to represent such indigent defendant . . . ." For purposes of this discussion, the text of this statute has remained virtually unchanged.

Because the legislature repealed § 54-81a, and neither the text nor the legislative history of P.A. 74-317, § 7, explicitly discusses appellate proceedings, the majority interprets the phrase "[i]n any criminal action" in P.A. 74-317, § 7, to encompass only trial proceedings. Several factors suggest, however, that "[i]n any criminal action" encompasses trial proceedings as well as the provisions for appellate counsel that were set forth in § 51-81a.

First, because the legislative history to P.A. 74-317, § 7, is silent, it is reasonable to examine the statutes that preceded that act to determine whether they provide any insight into the meaning of "[i]n any criminal action." If, as the majority claims, the phrase "[i]n any criminal action" can be interpreted to include only trial proceedings, why did the legislature use qualifying language to limit the scope of that phrase between 1959 and 1974? In 1959, when the legislature first used this phrase, it qualified it by stating "[i]n any criminal action in the circuit court . . . ." Public Acts 1959, No. 28, § 13. In 1974, when the Court of Common Pleas assumed the jurisdiction and functions of the Circuit Court; see P.A. 74-183, §§ 5 and 7; the legislature once again limited the scope of this phrase by stating "[i]n any criminal action in the court of common pleas . . . ." P.A. 74-183, § 150. In 1974, when the legislature eliminated the reference to appellate proceedings in § 51-81a by repealing that statute and it adopted P.A. 74-317, § 7, it failed to use any qualifying language to limit the scope of "[i]n any criminal action . . . ." As evidenced by its conduct between 1959 and 1974, "[t]he legislature is quite aware of how to use language when it wants to express its intent to qualify or limit the operation of a statute";

*State* v. *Ingram,* 43 Conn. App. 801, 825, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997); and the phrases "in the circuit court" and "in the court of common pleas" cannot be construed as excessive verbiage because "[w]e presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Internal quotation marks omitted.) *Ferrigno* v. *Cromwell Development Associates,* 244 Conn. 189, 196, 708 A.2d 1371 (1998). If the legislature had intended to limit the scope of P.A. 74-317, § 7, to encompass only the appointment of counsel in trial proceedings, it would follow, in light of its conduct between 1959 and 1974, that the legislature would have qualified "[i]n any criminal action" in P.A. 74-317, § 7, by referring to the trial court.

Second, although the legislative history to P.A. 74-317, § 7, is silent, the legislature's deletion of the limiting phrase "in the court of common pleas," which appeared in § 54-81a, as amended by P.A. 74-183, § 150, suggests that the legislature did not intend to eliminate any of the provisions for appellate counsel that were set forth in § 51-81a. Whereas § 54-81a, as amended by P.A. 74-183, § 150, provided that an indigent defendant had a statutory right to counsel "[i]n any criminal action in the court of common pleas" and contained a separate provision concerning appeals to the Appellate Session of the Superior Court and the Supreme Court, P.A. 74-317, § 7, provided only that an indigent defendant had a statutory right to counsel "[i]n any criminal action . . . ." The legislature's deletion of the limiting phrase "in the court of common pleas" in conjunction with its failure to discuss appellate proceedings in the text of P.A. 74-317, § 7, suggest that it intended to preserve the provisions for appellate counsel that were set forth in § 51-81a by subsuming them under the broad phrase "[i]n any criminal action." An indigent has a statutory

right, based on this interpretation of P.A. 74-317, § 7, to the assistance of counsel during the successive stages of a criminal action, which include trial, first appeal as of right and discretionary appeal to our Supreme Court.

Third, this interpretation of P.A. 74-317, § 7, effectuates the legislative intent underlying this act, whereas the majority's interpretation undermines that intent. In construing a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature"; (internal quotation marks omitted) *Conway* v. *Wilton*, 238 Conn. 653, 663, 680 A.2d 242 (1996); and in seeking to discern that intent, it is appropriate to look for guidance to statements made in the course of debate on the floor of the legislature. *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 8, 434 A.2d 293 (1980). In commenting on House Bill 5773, which became P.A. 74-317, Senator Richard S. Scalo stated: "[T]his is one of the most important bills that we have passed this session in terms of providing effective services in the criminal sphere for indigent people. . . . The state has a responsibility to provide adequate and effective legal counsel for those people who are unable to provide economically for counsel themselves. . . . I think that this bill will go a long way to removing all of those impediments towards the standard that we are all seeking which is equal, effective and adequate assistance of counsel for indigent people." 17 S. Proc., Pt. 6, 1974 Spec. Sess., pp. 2262–64. Although Senator Scalo was not specifically referring to § 7 of P.A. 74-317, his statements are nonetheless probative of the intent underlying that public act. "Although statements made on the floor of the legislature are not controlling on statutory interpretation, we may take judicial notice of those statements, which are strong indications of legislative intent." (Internal quotation marks omitted.) *West Haven* v. *Hartford Ins. Co.*, 221 Conn. 149, 159, 602 A.2d 988 (1992). Extending the statutory right

to counsel to include a discretionary appeal effectuates the legislature's broad goal of providing adequate and effective counsel for indigent defendants, whereas the majority's interpretation frustrates that objective. Moreover, it seems implausible that a legislature, concerned with affording greater protection to indigent defendants, would extinguish any of the provisions for appellate counsel that were set forth in § 51-81a.

Fourth, this interpretation of P.A. 74-317, § 7, which was codified as § 51-296, derives additional support from precedent that has adopted an expansive interpretation of this statute in habeas corpus proceedings. Section 51-296 (a) provides that an indigent defendant has a right to counsel "[i]n any criminal action, *in any habeas corpus proceeding arising from a criminal matter*, in any extradition proceeding, or in any delinquency matter . . . ." (Emphasis added.) Although there is no federal constitutional right to counsel in habeas corpus proceedings; *Pennsylvania* v. *Finley*, 481 U.S. 551, 559, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987); we have interpreted § 51-296's reference to "in any habeas corpus proceeding" to provide an indigent defendant with a statutory right to counsel in habeas hearings; *Iovieno* v. *Commissioner of Correction*, 242 Conn. 689, 701–702, 699 A.2d 1003 (1997); *Lozada* v. *Warden*, supra, 223 Conn. 838–39; and habeas appeals. *Iovieno* v. *Commissioner of Correction*, supra, 702; *Franko* v. *Bronson*, 19 Conn. App. 686, 692, 563 A.2d 1036 (1989). Interpreting "[i]n any criminal action" to encompass the successive stages of a criminal action is no more implausible than our interpretation of "in any habeas corpus proceeding" to include the successive stages of a habeas proceeding.

Although the majority properly points out that, in our judicial system, there are differences between the relative function of discretionary appeals and first appeals as of right, the right to apply for permissive

review is of great importance to a criminal defendant. "[I]n the context of constitutional questions arising in criminal prosecutions, permissive review in the state's highest court may be predictably the most meaningful review the conviction will receive. . . . [T]he state's highest court remains the ultimate arbiter of the rights of its citizens." *Ross* v. *Moffitt*, supra, 417 U.S. 619 (Douglas, J., dissenting). Our Supreme Court has recognized that part of its "function on a petition for certification is to determine whether the petition raises a substantial question which should be considered by [the court] in the interests of justice to the particular litigants . . . ." (Internal quotation marks omitted.) *State* v. *Chisholm*, 155 Conn. 706, 707, 236 A.2d 465 (1967). Moreover, "the technical requirements for applications for writs of certiorari are hazards which one untrained in the law could hardly be expected to negotiate." *Ross* v. *Moffitt*, supra, 621. "Certiorari practice constitutes a highly specialized aspect of appellate work. The facts which [a court] deems important in connection with deciding whether to grant certiorari are certainly not within the normal knowledge of an indigent appellant . . . ." B. Bosky, "The Right to Counsel in Appellate Proceedings," 45 Minn. L. Rev. 783, 797 (1961).

The majority also fails to explain adequately the impact its construction of § 51-296 will have on the current practice of the office of public defender in representing indigent defendants in filing petitions for certification or oppositions to the state's petitions for certification. Although this information is not in the record, it is permissible to take judicial notice of information that is published in the Connecticut Reports.[4]

---

[4] "To take judicial notice is a function, and to apply it to the decision of causes [is] a right, which appertains to every court of justice, from the lowest to the highest. . . . A court may take judicial notice of all matters that are (1) within the knowledge of people generally in the ordinary course of human experience . . . or (2) generally accepted as true and capable of ready and unquestionable demonstration . . . ." (Citations omitted; internal

The following statistics are limited to cases in which a petition for certification was filed seeking discretionary review of a direct appeal decided by this court. The office of the public defender or a special public defender filed a petition for certification or an opposition to the state's petition for certification in at least fourteen of the approximately twenty nonhabeas criminal petitions decided by our Supreme Court between January and April, 1999. Representation was provided in at least fifty-nine of the approximately ninety-five nonhabeas criminal petitions for certification decided in 1998.

The majority construes "[i]n any criminal action" in § 51-296 to provide for the appointment of counsel only in trial proceedings. When the majority's construction of § 51-296 is considered in light of the other provisions of that statute and precedent, an indigent defendant has a *statutory* right to counsel only at trial, habeas hearings, habeas appeals, extradition proceedings and delinquency matters, and there is no *statutory* right to counsel in a first appeal as of right and a discretionary appeal to our Supreme Court. Pursuant to the majority's interpretation of § 51-296, the legislature codified an indigent's constitutionally protected right to trial counsel and it established a statutory right to counsel in certain proceedings where there is no constitutional mandate; however, it purposefully decided not to codify the constitutional mandate for the appointment of counsel in a first appeal as of right. "The law favors a rational statutory construction and we presume that the legislature intended a sensible result." *State* v. *Parmalee*, 197 Conn. 158, 165, 496 A.2d 186 (1985). Construing "[i]n any criminal action" to encompass trial proceedings as well as the provisions for appellate counsel that were set forth in § 51-81a would avoid this unreasonable

quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 84 n.18, 700 A.2d 655 (1997).

result. On the basis of all of the factors mentioned, I would conclude that the petitioner has a statutory right to the assistance of counsel in the present case.

II

Although the petitioner has a statutory right to counsel in the present case, I would affirm the decision of the habeas court because each of the petitioner's claims is without merit.

A

The petitioner first claims that he was deprived of the effective assistance of appellate counsel when his attorney failed to file a petition for certification with our Supreme Court. I do not agree.

Pursuant to § 51-296, the petitioner has a right to counsel in filing a petition for certification with our Supreme Court and "[i]t would be absurd to have the right to appointed counsel who is not required to be competent." *Lozada* v. *Warden*, supra, 223 Conn. 838. "Indeed, § 51-296 would become an empty shell if it did not embrace the right to have the assistance of a competent attorney." Id., 839. In order for the petitioner to prevail on a claim of ineffective assistance of counsel, he has the burden of establishing that his counsel's performance was deficient, and that as a result of that performance he suffered actual prejudice. *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see *Hernandez* v. *State*, supra, 127 Idaho 687 (applying *Strickland* standard to petitioner's claim that counsel's failure to file petition for discretionary review with state Supreme Court constituted ineffective assistance of appellate counsel).

At a hearing before the habeas court, the petitioner testified that after this court had affirmed his conviction, he telephoned his attorney and asked her to file a petition for certification with our Supreme Court.

Appellate counsel did not file the petition. Relying on *Sekou* v. *Warden*, 216 Conn. 678, 690, 583 A.2d 1277 (1990), the habeas court determined that an appellate attorney's failure to seek discretionary review of an unmeritorious claim would not constitute conduct falling below the level of reasonably competent representation. See id. (holding that appellate counsel's failure to raise unmeritorious claim on direct appeal was not considered conduct falling below level of reasonably competent representation); see also *Williams* v. *Manson*, 195 Conn. 561, 564, 489 A.2d 377 (1985). After reviewing the record, the habeas court concluded that there were no issues worthy of certification by our Supreme Court and, therefore, appellate counsel's failure to file a petition for certification did not constitute conduct falling below the level of reasonably competent representation. The habeas court concluded that because the petitioner failed to demonstrate that his attorney's performance fell below the standard of reasonable competence, he did not satisfy the first prong of the *Strickland* standard.

On appeal, "[t]he underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . Whether the representation a defendant received . . . was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152–53, 662 A.2d 718 (1995).

Because the habeas court properly determined that the petitioner failed to satisfy the first prong of the *Strickland* standard, it is unnecessary to reach the second prong. *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 428–29, 589 A.2d 1214 (1991) (reviewing court can find against petitioner on either prong of *Strickland*). The first prong of the *Strickland* standard requires the petitioner to establish that his attorney's performance was deficient. *Strickland* v. *Washington*, supra, 466 U.S. 687. The proper standard for attorney performance under *Strickland* is one of "reasonably effective assistance." Id. The petitioner must demonstrate "that counsel's representation fell below an objective standard of reasonableness . . . . The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 425.

After a careful review of the record applying the appropriate standard of review; see *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 152–53; I agree with the habeas court that the performance of petitioner's appellate counsel, in not filing a petition for certification, did not fall below the standard of reasonable competence. Affirmance of the habeas court's decision is predicated on a careful consideration of the record in light of the factors set forth in Practice Book § 84-2. Section 84-2 provides in relevant part that "[c]ertification by the supreme court on petition by a party . . . will be allowed only where there are special and important reasons therefore. . . ." Section 84-2 lists several factors that, "while neither controlling nor fully measuring the court's discretion, indicate the character of the reasons which will be considered . . . ."

First, in affirming the conviction, the panel of three appellate judges did not decide "a question of substance not theretofore determined by the supreme court

. . . ." Practice Book § 84-2 (1). In his direct appeal to this court, the petitioner claimed that the trial court had improperly denied his motion to suppress a witness' pretrial identification. The law concerning pretrial identifications is well established in our state. See, e.g., *State* v. *Wooten*, 227 Conn. 677, 685–88, 631 A.2d 271 (1993); *State* v. *Colette*, 199 Conn. 308, 310–12, 507 A.2d 99 (1986). Second, there is no inconsistency between the panel's per curiam decision and other decisions from this court or the decisions of our Supreme Court. See Practice Book § 84-2 (1) and (2). Third, the petitioner neither cites, nor does the record disclose, any evidence that the panel "has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by any other court, as to call for an exercise of the supreme court's supervision." Practice Book § 84-2 (3). Fourth, a unanimous panel affirmed the petitioner's conviction. See Practice Book § 84-2 (5).

Moreover, the petitioner has the burden of establishing that his counsel's performance was deficient. *Strickland* v. *Washington*, supra, 466 U.S. 687; *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 455, 610 A.2d 598 (1992). At the habeas hearing, the petitioner's appellate counsel did not testify as to why she failed to file a petition for certification. Additionally, the petitioner did not offer any expert testimony that this case presented issues worthy of certification by our Supreme Court.

On the basis of all of the foregoing factors, I would conclude that the habeas court properly determined that the petitioner did not satisfy the first prong of the *Strickland* standard and, therefore, he was not deprived of the effective assistance of appellate counsel.

B

The petitioner next claims that he was denied the effective assistance of appellate counsel when his attorney failed to notify him of the full scope of his right to file a petition for certification. Specifically, the petitioner claims that General Statutes § 51-197f and Practice Book § 84-1 provide him with a right to file a pro se petition for certification seeking discretionary review of a final judgment from this court, and appellate counsel waived the petitioner's right, without first obtaining his consent, by failing to inform him that he could file a pro se petition for certification. The petitioner claims that appellate counsel's duty to notify him of this right flows logically from, inter alia, Practice Book § 43-30 and precedent concerning waiver of the right to appeal. The lack of an adequate record precludes review of this claim.

The habeas court signed the transcript of its oral decision and filed a copy with the clerk of the court. The signed transcript of the habeas court's oral decision is devoid of any reference to this specific claim. In particular, the signed transcript does not indicate whether the habeas court found that appellate counsel had notified the petitioner of his right to file a pro se petition for certification or whether counsel neglected to provide such notice. Without this predicate factual finding, it is not possible to review this claim. The burden of securing an adequate record for appellate review rests with the petitioner. *Evans* v. *Commissioner of Correction*, 37 Conn. App. 672, 689, 657 A.2d 1115, cert. denied, 234 Conn. 912, 660 A.2d 354 (1995). Although the petitioner could have ensured the adequacy of the record by filing a motion for articulation, he failed to seek articulation. The lack of an adequate record therefore precludes review of this claim.

## C

In his final claim, the petitioner contends that his attorney's failure to file a petition for certification with our Supreme Court deprived him of his only opportunity to seek review of this court's affirmance of his conviction, in violation of the reasoning underlying our Supreme Court's decision in *Simms* v. *Warden,* 230 Conn. 608, 616, 646 A.2d 126 (1994). I do not agree.

Although *Simms* and the present case address entirely different subject matter, the petitioner's argument relies on the reasoning underlying the decision in *Simms. Simms* established that a petitioner could appeal from a habeas court's denial of his request for certification to appeal the denial of a petition for a writ of habeas corpus. Id., 612. In the present case, the petitioner claims that, unlike the petitioner in *Simms,* who was afforded an opportunity to appeal the habeas court's denial of a request for certification to appeal, his attorney's failure to file a petition for certification with our Supreme Court deprived him of his only opportunity to seek review of this court's affirmance of his conviction.

The petitioner's claim fails because he ignores the relief potentially available through filing a petition for a writ of habeas corpus. General Statutes "§ 52-470 (a) empowers the habeas court to dispose of cases 'as law and justice require.' " *James L.* v. *Commissioner of Correction,* 245 Conn. 132, 148, 712 A.2d 947 (1998). Because the petitioner failed, however, to establish that counsel's failure to file a petition for certification constituted ineffective assistance of counsel, it is unnecessary to determine what type of relief might be available to him in a habeas proceeding.