Roger N. CARLSTEN

v.

OSCAR GRUSS & SON, INC.

No. 2002–568–Appeal.

Supreme Court of Rhode Island.

June 11, 2004.

Paul M. Safford, Esq., for Plaintiff.

William Alan Jacobson, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

FLAHERTY, Justice.

The respondent, Oscar Gruss & Son, Inc. (Gruss), a New York based registered broker-dealer of securities, asks this Court to reverse a Superior Court judgment entered in favor of the petitioner-investor, Roger N. Carlsten, affirming an arbitration award.[1] The award was issued by an arbitration panel conducted under the auspices of the National Association of Securities Dealers Dispute Resolution, Inc. (NASD). Gruss maintains that the hearing justice erred in confirming the award because the arbitrators acted in manifest disregard of the law and that the award was irrational. We disagree and, for the reasons herein, we affirm the judgment of the Superior Court.

### Facts/Procedural History

In 1998, Carlsten purchased a private investment "unit" in a Delaware corporation located in New York named Wheeled Electric Power Company (Wheeled Electric) for $120,000. Gruss brokered the deal through its registered representative, John Chambers. In return for his investment, Carlsten received 20,000 shares of Wheeled Electric's common stock, as well as a promissory note for the principal

---

1. Rhode Island law has been applied to this case throughout the proceedings.

amount, plus interest. Within a year of the deal, Wheeled Electric declared bankruptcy and Carlsten lost his entire investment. He then sought a refund, alleging that he had been fraudulently induced into entering the contract.

When the parties failed to reach an agreement, they submitted their dispute to an arbitration panel for binding arbitration. In his statement of claim, filed December 11, 2000, Carlsten alleged various counts against Gruss,[2] including fraud, misrepresentation, negligence and violation of Rhode Island securities law. In addition to seeking a refund of his investment, with interest, Carlsten sought punitive damages. Gruss responded by denying liability under any theory. It also maintained that the claim for punitive damages was meritless and counterclaimed for the costs of defending that particular count. Subsequently, each party signed a Uniform Submission Agreement (the submission), agreeing to abide by the Code of Arbitration Procedure for the NASD. The code does not require arbitrators to provide reasons for an award, nor does it limit their discretion to fashion appropriate relief. Here, the parties did not request the panel to provide an explanation or rationale for its decision and award.

In March 2002, a hearing was conducted on Carlsten's claims. Subsequently, the arbitration panel issued a written award holding Gruss liable to Carlsten for compensatory damages in the amount of $72,000, plus interest accruing from December 12, 2000. Additionally, it awarded

Carlsten $2,000 as a sanction against Gruss for discovery violations. Carlsten's punitive damages claim and Gruss's counterclaim were denied. There was no analysis or explanation of the award.

On April 8, 2002, Carlsten petitioned the Superior Court to confirm the arbitration award. Gruss objected to the motion to confirm and filed a motion to vacate. A hearing was conducted in the Superior Court and, after considering the memoranda and arguments of counsel, the hearing justice denied the motion to vacate and confirmed the award. Gruss timely appealed.

## Analysis

Gruss asserts that the hearing justice erred on three separate grounds when he did not vacate the arbitration award. First, it contends that recovery was barred because, despite any alleged oral representations to the contrary, Carlsten acknowledged in writing that the investment was highly speculative.[3] Second, it avers that the actual amount of the award had no rational basis and that, under the NASD code, the panel was permitted to award interest only from the date of the award. Finally, Gruss maintains that Rhode Island comparative negligence law does not permit the apportionment of liability in cases involving a business claim such as the one made here. Our review of the record discloses that none of these alleged errors required vacating the award; consequently, the hearing justice properly confirmed the arbitration award.

---

2. A second respondent, Broadband Capital Management, LLC, also was named in the statement of claim. Broadband allegedly was "a successor in part to certain of the assets and/or liabilities of Gruss, including the accounts of Claimant formerly held at Gruss." Broadband filed a Uniform Submission Agreement, but did not appear at the hearings and is not a party to this appeal. Chambers was not named as a party.

3. The offering Memorandum that Carlsten signed contained a bold, capitalized disclaimer providing that the securities in question "are speculative, involve a high degree of risk and should not be purchased by anyone who cannot afford the loss of his entire investment."

We observe from the outset that the arbitration panel did not provide any analysis explaining its reasons for the award. However, the NASD code does not require the panel to provide reasons for its award and the parties did not request that it do so in their submissions.

■ As we have noted previously, "[p]arties who voluntarily contract to use arbitration as an expeditious and informal means of private dispute resolution are bound by the terms of their agreement[,]" *Leonard v. McDowell*, 824 A.2d 1266, 1270–71 (R.I.2003), and "thereby avoid[ ] litigation in the courts." *Purvis Systems, Inc. v. American Systems Corp.*, 788 A.2d 1112, 1118 (R.I.2002) (quoting *Aetna Casualty & Surety Co. v. Grabbert*, 590 A.2d 88, 92 (R.I.1991)). "[T]hose who agree to enter into binding arbitration agreements do so at the risk that they may be underestimating the strength of their claim." *Leonard*, 824 A.2d at 1271.

"The defining feature of the arbitral forum is the absence of the strictures— and the protections—of formal procedural and evidentiary rules. When private parties, acting on equal footing, voluntarily agree to arbitration with all its risks and benefits as their preferred method of settling disputes, courts should not undermine either the parties' choice or the statutory scheme by imposing specific evidentiary rulings and findings of fact for the purpose of judicial review." *Purvis Systems Inc.*, 788 A.2d at 1118.

■ Furthermore, unless "the applicable statute, the arbitration agreement or the submission so requires[,]" *Westminster Construction Corp. v. PPG Industries, Inc.*, 119 R.I. 205, 209–10, 376 A.2d 708, 710 (1977), "arbitrators of a commercial dispute, like a jury, are under no obligation to set out the reasons for their award or the findings of fact or conclusions of law on which that award is premised."

*Purvis Systems Inc.*, 788 A.2d at 1118 (quoting *Westminster Construction Corp.*, 119 R.I. at 209, 376 A.2d at 710). "To hold otherwise 'would undermine the very purpose of arbitration, which is to provide a relatively quick, efficient and informal means of private dispute settlement.'" *Id.*

"This Court has consistently recognized that the role of the judiciary in the arbitration process is 'extremely limited.'" *Purvis Systems, Inc.*, 788 A.2d at 1114 (quoting *Romano v. Allstate Insurance Co.*, 458 A.2d 339, 341 (R.I.1983)). "The limited scope of judicial review of arbitration awards by the Superior Court is essential to ensure that parties may benefit from arbitration as an informal, expedient alternative to litigation in the court system." *Purvis Systems, Inc.*, 788 A.2d at 1118.

Deference to arbitration awards, however, is not without limits. By statute, G.L. 1956 § 10–3–12,

"the court must make an order vacating the award upon the application of any party to the arbitration:

(1) Where the award was procured by corruption, fraud or undue means.

(2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

In addition to the narrow statutory grounds mentioned above, "an arbitration award may be overturned if the award was irrational or if the arbitrator manifestly disregarded the law." *Purvis Systems, Inc.*, 788 A.2d at 1115. We again emphasize "that the latter standard requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'" *Id.* (quoting *Westminster Construction Corp.*, 119 R.I. at 211, 376 A.2d at 711). A manifest disregard of the law might exist "'when arbitrators understand and correctly state the law, but proceed to disregard the same.'" *Id.* However, "[a]s long as the award 'draws its essence' from the contract and is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." *Id.* (quoting *Jacinto v. Egan*, 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978)).

### A. Fraud in the Inducement

In his submissions to the arbitration panel, Carlsten alleged that Chambers fraudulently induced him to invest in Wheeled Electric by misrepresenting the company's investment potential. He claimed that he relied upon these misrepresentations to his detriment when he signed the agreement without reading it.

Gruss countered by pointing out that the signed agreement specifically stated that the investment was highly speculative and it asserts that Carlsten was precluded by law from claiming reasonable reliance upon any contradictory oral representations.[4] It also maintained that Carlsten's alleged failure to read the agreement before signing it was not a valid defense. Consequently, it reasons that the arbitration panel manifestly disregarded the law when it considered Carlsten's arguments and that the Superior Court erred in failing to vacate the award on this basis.

Under the parol-evidence rule, "'parol or extrinsic evidence is not admissible to vary, alter or contradict a written agreement.'" *Filippi v. Filippi*, 818 A.2d 608, 619 (R.I.2003) (quoting *Paolella v. Radiologic Leasing Associates*, 769 A.2d 596, 599 (R.I.2001)). "The basis of the rule is that a complete written agreement merges and integrates all the pertinent negotiations made prior to or at the time of execution of the contract." *Filippi*, 818 A.2d at 619 (quoting *Fram Corp. v. Davis*, 121 R.I. 583, 587, 401 A.2d 1269, 1272 (1979)). "A document is integrated when the parties adopt the writing as 'a final and complete expression of the agreement.'" *Id.* "Once integrated, other expressions, oral or written, that occurred prior to or concurrent with the integrated agreement are not viable terms of the agreement." *Id.* Furthermore, "a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents." *C & J Leasing Corp. v. Paolino*, 721 A.2d 839, 841 (R.I.1998) (quoting *F.D. McKendall Lumber Co. v. Kalian*, 425 A.2d 515, 518 (R.I.1981)).

However, "if one is induced to enter into a contract based upon a fraudulent statement from the other party to the contract, then the party who has been fraudulently induced is not bound by the contract." *Bjartmarz v. Pinnacle Real Estate Tax Service*, 771 A.2d 124, 127 (R.I. 2001) (per curiam). Moreover, "a party may invoke a claim of fraud in the inducement, even if he or she was negligent in

---

4. Gruss cites to *Jackvony v. RIHT Financial Corp.*, 873 F.2d 411 (1st Cir.1989) and *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798 (1st Cir.1987) to support this argument, and states that it brought all the relevant law to the attention of the arbitration panel in its supporting documents.

failing to read the contract." *Id.* In such instances, "parol evidence is admissible in connection with proving a claim for fraud in the inducement of a contract." *Id.*

Since there was no written decision, we do not know, and will not speculate, as to whether the arbitration panel considered Carlsten's fraud in the inducement claim when it made its award. However, in view of the foregoing law, such considerations would have been both wholly proper and within the province of the arbitration panel, and would not have provided any basis for the hearing justice to vacate the award.

## B. The Award Amount and Interest

██ Gruss contends that, depending upon whether it believed him, the arbitration panel was restricted to awarding Carlsten either the full amount of his claim for $120,000 or absolutely nothing. It maintains that any other result, in this case an award of $72,000, constituted an improper and irrational compromise. Gruss further avers that the arbitration panel ignored its own code and irrationally awarded interest from the commencement of the action rather than from the date of the award. Consequently, it asserts that the hearing justice should have vacated the award for either of these reasons alone. We disagree.

 "[S]ubject to the terms of the empowering clause, arbitrators possess latitude in crafting remedies as wide as that which they possess in deciding cases." *Advest, Inc. v. McCarthy,* 914 F.2d 6, 10–11 (1st Cir.1990). " '[I]f the parties do not pre-negotiate remedies, the arbitrator can fashion them as part of his [or her] decisional discretion.' " *Id.* at 11. Section 10214 of the NASD Code of Arbitration Procedure provides that "[t]he arbitrator(s) shall be empowered to award any relief that would be available in court under the law." Additionally, Section 10330(h) of that code provides that:

"[a]n award shall bear interest from the date of the award: (1) if not paid within thirty (30) days of receipt, (2) if the award is the subject of a motion to vacate which is denied, or (3) as specified by the arbitrator(s) in the award."

Considering the latitude granted an arbitrator in both fashioning an award, as well as in deciding a remedy and in awarding interest, we cannot say that the arbitration panel manifestly disregarded the law or acted irrationally in its award to Carlsten. Consequently, the hearing justice acted appropriately in confirming both the interest and the award amount.

## C. Liability Apportionment

██ Besides asserting that the amount of the award was irrational, Gruss maintains that it constituted an impermissible apportionment of liability between the parties that was itself irrational and in manifest disregard of the law. Gruss asserts that comparative negligence is not a valid defense in commercial litigation involving alleged misrepresentation. Consequently, it contends that the panel manifestly disregarded the law of comparative negligence by apportioning liability and, for this reason, it insists that the hearing justice erred confirming the award.

We need not address the propriety of assessing comparative liability in a commercial misrepresentation case because there is no evidence that such an assessment took place. That is because it is impossible for us to determine from the award whether the arbitrators understood but, nevertheless, intentionally disregarded the law. Had the panel agreed to set forth its reasoning upon the request of either party, then the award could have been viewed through the prism of rationality. However, the NASD rules do not require such analysis by the panel and the parties did not so request. *See Westmin-*

*ster Construction Corp.,* 119 R.I. at 211, 376 A.2d at 711. Thus, considering the Superior Court's limited scope of judicial review, and "mindful of the strong presumption in favor of the validity of arbitration awards," *Purvis Systems, Inc.,* 788 A.2d at 1118, we conclude that the hearing justice correctly confirmed the award.

Accordingly, and for the foregoing reasons, the appeal by Gruss is denied and dismissed and the judgment appealed from affirmed. The papers of this case are remanded to Superior Court.