[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court are motions to vacate two arbitration decisions that awarded to 66 members of the Division of Sheriffs 127 "lost" overtime opportunities as a result of administrative failures in implementing the overtime provisions of a collective bargaining agreement. In support of its motion, the State of Rhode Island (the "State") has filed a memorandum of law and exhibits. Respondent, Rhode Island Council 94, AFSCME, AFL-CIO, Local 2409 (the "Union"), timely filed an objection, supported by a memorandum of law and exhibits. Argument was heard by this Court on September 17, 2004. The respondent has also filed a Motion to Confirm the arbitrator's awards.
 FACTS AND TRAVEL
The State and the Union are engaged in a dispute involving overtime opportunities offered to employees of the recently created Division of Sheriffs. Prior to July of 2001, there existed five separate county sheriff offices, as well as a State Marshall's Office. County deputy sheriffs, under the Department of Administration's jurisdiction, were primarily responsible for courtroom security. Deputy marshals, under the Department of Corrections' jurisdiction, were primarily responsible for the transportation of prisoners. In July of 2001, with the enactment of Chapter 77 of Article 29 of the 2001 Public Laws, a major reorganization of these personnel took place, namely the creation of a statewide Division of Sheriffs, under the jurisdiction of the Department of Administration. See P.L. 2001, Ch. 77, Art. 29; G.L. 1956 § 42-11-21. Under this new Department, the functions of the sheriffs and marshals would be merged. To ensure a smooth transition, the Director of Administration was given the authority to postpone the actual transfer of functions within the new Division for up to three years after the merger. Section 42-11-21(d)(2).[1]
In September of 2001, the Union that had represented the deputy sheriffs was elected to represent both the deputy sheriffs and deputy marshals. Later, in January 2002, the marshals and sheriffs agreed to adhere to a single Collective Bargaining Agreement ("CBA") — the one that had been in effect between the State and the sheriffs. The present dispute involves Articles 8.6 and 8.8 of this CBA, which Articles State:
 8.6 "Overtime work is to be made a matter of record and distributed fairly and equitably among employees eligible for and capable of performing the work in their respective division and class of position. A record of overtime work will be furnished to the Union at the close of each pay period."
 8.8 "Overtime shall be offered to employees eligible for their overtime on the basis of their seniority in their classification within the division in which they are employed. An employee offered overtime will be excused at their request, provided authorized personnel are available and willing to meet the need; and any employee so excused shall not be offered overtime work again, until their name comes up again in the seniority rotation. In the event that an insufficient number of employees within the classification and division in which overtime work is assigned voluntarily accept the assignment, the State may direct and require employees within the classification and division to perform the work. Such required overtime assignments shall be made in the reverse order of seniority. A record of overtime work will be furnished to the Union at its request."
The Union takes the position that after the merger took place in July of 2001, the State breached these contractual provisions. Before the merger, deputy sheriffs had the opportunity to work overtime on "hospital detail," that is, guarding inmates while they received medical care. After the merger, deputy marshals were also eligible for these overtime assignments. However, the administration continued to use the separate seniority lists from the several county offices that had been in use before the merger. Thus, overtime assignments to hospital duty were not being made according to order of seniority among all employees of the Division of Sheriffs statewide. The Union took the position that this was a breach of the Collective Bargaining Agreement.
After several complaints to the administration, the Union filed a grievance against the State on April 19, 2002.[2] In June of 2002, the Union also submitted a single statewide seniority list to Executive High Sheriff James DeCastro ("DeCastro"), the head of the Division of Sheriffs. DeCastro did not implement the unified seniority list. The Union followed up with a complaint to the Director of the Department of Administration, Dr. Robert Carl ("Carl"). On November 12, 2002, Carl dispatched a memorandum to DeCastro that read:
 "We need to implement statewide seniority for the sheriffs and marshals. Overtime should be spread around. I am particularly concerned about the hospital details and the extraditions."
 "It is my understanding that there have been a number of personnel trained to handle these matters, and it is unacceptable to have a small number of people receiving the block of the overtime for these matters. It puts the state in clear jeopardy and it is, frankly, unfair. I would like you to look into these matters and advise me as this is addressed." Still the administration took no action. Eventually, DeCastro was replaced by Lieutenant Stephen Lynch of the Rhode Island State Police, who on March 7, 2003 implemented a single statewide overtime list for the assignment of hospital details. The Union then submitted its grievance to arbitration in order to secure compensation for its members. The first hearing was held on March 26, 2003.
The issues addressed by the arbitrator at the first hearing were as follows: "(1) Is the grievance arbitrable? (2) Did the State violate the parties' Collective Bargaining Agreement in the manner in which it offered overtime opportunities for hospital details for qualified employees in the Sheriff's Department? (3) If so, what shall be the remedy?" RhodeIsland Council 94, AFSCME v. Rhode Island, No. 11-390-03019-02, at 2 (July 8, 2003) (Paci, Arb.) (hereinafter July 8, 2003 Award).
The arbitrator found that the grievance was arbitrable and "the overtime provisions of the contract were in force and effect and binding on the state." Id. at 10. Further, the arbitrator found that the administration's failure to use a statewide seniority list violated the terms of the Collective Bargaining Agreement. Id. Offering overtime to all employees equally, he stated, was a clear duty, and as such, should have been performed within a reasonable time. Id. Lacking a more precise definition of reasonable time, the arbitrator held that a reasonable time had passed on November 12, 2002 when Carl issued his memorandum to DeCastro, and that the violation continued until March 7, 2003. Id. at 11. The arbitrator ordered the State to make monetary restitution to the grievants, in amounts to be mutually agreed upon by the parties, and retained jurisdiction to address any disputes relating to the amount of compensation. Id. at 11.
Because the parties could not agree on the proper amount of restitution, a second hearing was held on December 16, 2003, at which the parties presented arguments and evidence. State of Rhode Island Council94, AFSCME v. Rhode Island, Case No. 11 390 03019 02 (Feb. 3, 2004) (Paci, Arb.) (hereinafter Feb. 3, 2004 Award). In his February 3, 2004 Award, the arbitrator found that in addition to the deputy sheriffs and marshals who had lost overtime opportunities, several officers in charge were also entitled to restitution. The February 3, 2004 Award lists the employees to be compensated, the dates they should have been called to work overtime, and the number of hours for which they should have been paid. The arbitrator did not set forth his reasons for awarding compensation to the supervising officers, or how he calculated the hours for which each grievant was entitled to compensation. Unsatisfied with both the July 8, 2003 Award and the February 3, 2004 Award, the State has moved this Court to vacate both Awards.
 STANDARD OF REVIEW
Judicial review of arbitration awards is statutorily prescribed and very limited. City of Woonsocket v. International Bhd. of PoliceOfficers, Local 404, 839 A.2d 516, 518 (R.I. 2003). A reviewing court must vacate an arbitrator's award:
 "(1) When the award was procured by fraud;
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject matter submitted was not made;
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13." Section 28-9-18(a).
A clear case of an arbitrator exceeding his or her authority is to hear a dispute that is not arbitrable. Rhode Island v. Rhode Island Alliance ofSocial Services Employees, Local 580, SEIU, 747 A.2d 465, 468 (R.I. 2000) (hereinafter RIASSE). "`[W]hether a dispute is arbitrable is a question of law to be reviewed by the court de novo.'" Id. (quoting Rhode IslandCouncil 94, AFSCME, AFL-CIO v. State, 714 A.2d 584, 588 n. 2 (R.I. 1998)); Sch. Comm. of N. Kingstown v. Crouch, 808 A.2d 1074 (R.I. 2002). "[R]eview of the issue of arbitrability, therefore, should not be equated with the deference due the arbitrator" in other respects. Rhode IslandCouncil 94, 714 A.2d at 588 n. 2. (citing Providence Teachers' UnionLocal 958 American Fed. of Teachers v. Providence Sch. Comm., 433 A.2d 202,205 (R.I. 1981)).
If the underlying grievance is indeed arbitrable, an arbitration award will be vacated only for the three statutory reasons above, or if the award evidences "a manifest disregard of a contractual provision or a completely irrational result." City of Woonsocket, 839 A.2d at 518. "As long as the award `draws its essence' from the contract and is based on a `passably plausible' interpretation of the contract, it will be upheld."Id. (citations omitted).
Finally, any party to the controversy may move the court for an order confirming the award. Section 28-9-17. The court must grant the motion unless the award is vacated, modified or corrected, or is unenforceable. Id.
 ARBITRABILITY OF THE GRIEVANCE
If the arbitrator exceeded his authority in making the July 8, 2003 or February 3, 2004 Awards, they must be vacated. "A sure way for an arbitrator to exceed his or her powers is to arbitrate a dispute that is not arbitrable in the first place." RIASSE, 747 A.2d at 468 (citing RhodeIsland Bhd. of Correctional Officers v. State Department of Corrections,707 A.2d 1229, 1234 (R.I. 1998)). The State asserts that the Union's grievance was not arbitrable, and thus, that the arbitrator exceeded his authority in hearing it. The State bears the burden of proving that the arbitrator exceeded his authority. Coventry Teachers' Alliance v.Coventry Sch. Comm., 417 A.2d 886, 888 (R.I. 1980). ("As a general rule, when a party claims that the arbitrators have exceeded their authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made.")
The State first argues that the grievance is not arbitrable under the terms of the CBA. The CBA between the State and the Union provides that only grievances arising out of the provisions of the agreement relating to the application or interpretation thereof may be submitted to arbitration. The State argues that the assignment of hospital detail was not governed by the CBA, but by § 42-11-21(d)(2), and so, by the terms of the CBA, the grievance was not arbitrable. However, the arbitrator found that the assignment of hospital detail was governed by the CBA. July 8, 2002 Award at 11. The arbitrator relied on Articles 8.6 and 8.8 of the CBA that state, respectively: "Overtime work is to be made a matter of record and distributed fairly and equitably among employees;" "Overtime shall be offered to employees eligible for overtime on the basis of their seniority in their classification within the division in which they are employed."
The issue of whether the arbitrator exceeded his authority by hearing a grievance that was not arbitrable is reviewed de novo. RIASSE,747 A.2d at 468. Under this standard, the Court finds that the proper assignment of hospital detail was governed by Articles 8.6 and 8.8 of the CBA. By the terms of the CBA, then, the dispute is arbitrable because the grievance arises out of the agreement. The arbitrator properly entertained the dispute.
The State next argues that the arbitrator exceeded his authority by hearing a dispute that was not arbitrable because his decision concerned an "employment requirement." In support of its argument, the State relies on RIASSE. In RIASSE, our Supreme Court upheld a Superior Court's vacation of an arbitration award that held that state workers could count sick leave toward overtime, in derogation of both their collective bargaining agreement and a clear state law prohibition on such a practice. RIASSE, 747 A.2d at 468. The Court held that the prohibition constituted a "clear, non-modifiable-statutory mandate" that an arbitrator could not circumvent, and that "a valid employment requirement prescribed by state law cannot be negotiated and is not a proper subject for arbitration." Id. (citing Pawtucket School Comm. v. PawtucketTeachers' Alliance Local No. 930, AFT, 652 a.2d 970, 972 (R.I. 1995)).
The State argues that the transfer of the hospital detail function was required by § 42-11-21(d)(2), not by the CBA. Powers and duties that are assigned to employees by state law, the State argues, are not a proper subject for arbitration. See RIASSE, 747A.2d at 468. Reviewing the arbitrability issue de novo, this Court finds that the statutory grant of discretion to the director as to when functions would be transferred was not a statutory mandate of the kind at issue in RIASSE. Although the impetus for the transfer of the hospital detail function was § 42-11-21, the Court finds that the statute did not govern the manner in which overtime should be assigned. Absent such a provision, it was proper for the arbitrator to look to the CBA. The arbitrator did not exceed his powers by entertaining a dispute over requirements of state law; as the dispute concerned requirements of the CBA, the dispute was arbitrable.
The State also contends that the arbitrator exceeded his authority because his decision contravened state law and violated public policy. The State relies on State Dep't of Children Youth and Families v. RhodeIsland Council 94, 713 A.2d 1250 (R.I. 1998) (hereinafter DCYF). InDCYF, our Supreme Court held that "[a]n arbitrator may also exceed his or her powers by interpreting a CBA in a way that contravenes state law or other public policies that are not subject to alteration by arbitration."DCYF, 713 A.2d at 1253. The Court finds that the arbitrator's award does not contravene state law. In this case, the administration could conform to the requirements of the CBA while acting consistently with state law, specifically § 42-11-21(d)(2). Section 42-11-21(d)(2) does not mandate that the State take the full three years allowed to complete the transfer of functions; it simply allows for a transition period. Had the CBA not required that overtime be allocated "fairly and equitably among employees eligible for and capable of performing the work in their respective division," the director could have properly postponed implementing a single seniority list until July 5, 2004. However, the arbitrator found that the CBA required this measure to be taken earlier than three years after the merger. The court finds no actual conflict between the agreement and state law. The Court finds that the arbitrator was therefore within his authority in making his award.
In addition, the defendant has failed to identify any public policy that would be altered or overridden by this arbitration award. See RhodeIsland Bhd. of Correctional Officers v. State Dep't of Corrections,707 A.2d 1229, 1234 (R.I. 1998) (noting that where there is a "possibility that an arbitrator might be called upon to consider and to interpret a CBA in such a way that it would alter existing statutory policies or override other supervening state law governing the public-employment sector," a grievance is not arbitrable.) Mindful that the State bears the burden of proof and this Court must make every reasonable presumption in favor of the validity of the award, the Court, reviewing the question of arbitrability de novo, finds that the Union's grievance was arbitrable. See Coventry Teachers' Alliance, 417 A.2d at 888;RIASSE, 747A.2d at 468. The arbitrator's award in favor of the Union under the CBA was proper, did no violence to any statutory mandate or public policy, and did not exceed his authority.
The State's final argument regarding the arbitrability of the dispute is that the permissive three year period allowed for the merger by the legislature was actually a "statutory requirement," essentially arguing that the Union was required to wait until the director, at his pleasure, ordered a transfer of the hospital detail function. "If a statute contains or provides for nondelegable and/or nonmodifiable duties, rights, and/or obligations," a dispute is not arbitrable. RIASSE,747 A.2d at 469. However, it appears from the record that the actual "function" had already been transferred, while the method of assigning overtime among the newly merged employees did not yet conform to the requirements of the CBA. The State insists that the arbitrator's finding that a single seniority list should have been used before July 5, 2004 was in direct contravention of a state statute because only the director, not an arbitrator, had the authority to decide when to implement a single list.
The Court, reviewing the question of arbitrability de novo, finds that while the director did have the authority to postpone implementation of a statewide seniority list — in order to ensure continuity — the director did not have the statutory authority to ignore the CBA. The agreement was in effect at all relevant times; the State had been honoring it in other respects. The Union's complaints, the fact that the Union had submitted its own statewide list, as well as Carl's memorandum to DeCastro, show that the State understood the overtime provisions, knew that they were in effect and enforceable, and that they did not conflict with state law. The arbitrator's finding that a single seniority list should have been implemented in a reasonable time after the merger, and that a reasonable time passed on November 12, 2002 when the Director of Administration, Dr. Carl, directed that it be implemented, does not conflict with any statutory requirement. The grievance was arbitrable.
 MERITS OF THE JULY 8, 2003 AND FEBRUARY 3, 2004 AWARDS
Having determined that the grievance at issue was arbitrable, the Court now turns to the State's arguments attacking the substance of both the July 8, 2003 and the February 3, 2004 Awards. In the July 8, 2003 Award, the arbitrator decided the controversy in the Union's favor and found that monetary compensation was the appropriate remedy; in the February 3, 2004 Award, the arbitrator determined which grievants would receive compensation, and how much. The State argues that both should be vacated because they are irrational. The arbitrator is entitled to significant deference from this Court on review. See City of Woonsocket,839 A.2d at 518.
Attacking the July 8, 2003 Award, the State first argues that the arbitrator's finding that "DeCastro was mandated to implement a statewide seniority list" was irrational. The State contends that Carl's November 12, 2002 memorandum was merely a "request for information," not a directive. The State relies on language in the memorandum that reads: "I would like you to look into these matters and advise me as this is addressed." Id. This Court does not find that the arbitrator's interpretation of this directive as being a (polite) mandate to remedy the overtime problem as "unreasonable, foolish, absurd," as the State defines "irrational." Id. Indeed, even if this Court disagreed with the arbitrator's finding on this point, the Court may not reverse solely on that basis. See Council 94, AFSCME, AFL-CIO v. State of Rhode Island,475 A.2d 200, 203 (R.I. 1984) ("judicial reversal of an arbitrator's award solely on the ground of a reviewing court's disagreement with his construction of the contract is prohibited.")
Next, the State declares that the arbitrator's characterization, in the July 8, 2003 Award, of the State's breach of contract as willful was irrational. That argument has no relevance to this Motion to Vacate, as the arbitrator's characterization of the State's breach has no effect on either the award or the remedy.
The State also challenges the type of compensation awarded by the arbitrator in the July 8, 2003 Award. The State contends that it is the general practice to award compensatory overtime rather than monetary compensation for missed overtime opportunities. Thus, the State argues, because the arbitrator awarded monetary compensation and did not give reasons for making this unusual award, the award is irrational. The Union argues that the award was within the arbitrator's authority to award monetary compensation.
Our Supreme Court has repeatedly held that "an arbitrator has the inherent power to fashion an appropriate remedy as long as the award draws its `essence' from the contract and is based upon a `passably plausible' interpretation of the contract." Town of Coventry v. Turco,574 A.2d 143, 148 (R.I. 1990) (Kelleher, J. dissenting) (quoting City ofPawtucket v. Pawtucket Lodge No. 4, 545 A.2d 499, 503 (R.I. 1988)). In addition, the American Arbitration Association Rules, which governed this arbitration, provide that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." Pier House Inn v. 421 Corp.,812 A.2d 799, 804 (2002). In the present case, the arbitrator apparently found that monetary compensation was "an appropriate remedy." The State provides no argument or evidence that this type of remedy does not draw its essence from the contract, or is not based on a passably plausible interpretation of the contract, but simply argues that it is not in line with the general trend. The State has not met its burden of showing that the award of monetary compensation is irrational. See Coventry Teachers'Alliance, 417 A.2d at 888. The State's Motion to Vacate the July 8, 2003 Award is therefore denied.
Following the July 8, 2003 Award, the parties were unable to agree on the amount of compensation due to the grievants. Accordingly, they submitted the issue to the arbitrator for resolution. A hearing was held, at which the parties argued and submitted evidence. The arbitrator issued a decision containing a brief statement of the case and an award that read, in its entirety:
 "After reviewing all of the evidence submitted by the parties, I find that the officers in charge are entitled to this remedy. Therefore, the following is a list of employees, dates they should have been called to work overtime, and the number of hours they should be paid at their overtime rate pursuant to Article 8 of the contract between the parties." Feb. 3, 2004 Award.
This was followed by the list described therein.
The State argues that the method the arbitrator used to calculate the amount of compensation the grievants were entitled to was irrational. According to the State, approximately 127 hospital details were worked between November 12, 2002 and March 7, 2003 when the single seniority list was implemented, 105 of them by Providence County deputies. The State argues that this would have left a possible twenty-two details that the sixty-six deputies from other counties could have worked. However, the State claims that in allocating the possible 127 shifts, the arbitrator excluded the Providence deputies and used a master list that only included the other sixty-six deputies. In addition, the State contends that the arbitrator assumed that every employee would take every overtime opportunity offered, failing to recognize that not all available employees would have accepted assignments. Thus, the State maintains, the deputies would be overcompensated if the arbitrator's award were upheld. Finally, the State argues that the arbitrator awarded compensation to certain supervising officers who were not parties to the original complaint and to whom no overtime opportunities were available during the period in question. The Union argued before the arbitrator that the officers in charge were "eligible employees" and part of the grievance.
Surprisingly, the arbitrator's award does not contain any indication of how he computed the number of overtime opportunities, or determined who should have worked them had there been a statewide seniority list. This omission causes the Court great consternation. The Union, however, is sanguine, arguing that in Rhode Island, arbitrators have no obligation to set out reasons for their award or the findings of fact or conclusions of law on which that award is premised. Indeed, our Supreme Court has held that "arbitrators of a commercial dispute, like a jury, are under no obligation to set out the reasons for their award or the findings of fact or conclusions of law on which that award is premised." WestminsterConst. Corp. v. PPG Indust., Inc., 119 R.I. 205, 209, 376 A.2d 708, 710
(1977) (emphasis added). There are only a handful of cases in which this rule has been applied in Rhode Island, all of them commercial disputes involving private parties. See id.; Feibelman v. F.O., Inc., 604 A.2d 344
(R.I. 1992); Purvis Systems, Inc. v. American Systems Corp., 788 A.2d 1112
(R.I. 2002); Carlsten v. Oscar Gruss Son, Inc., 853 A.2d 1191 (R.I. 2004); but see Department of Mental Health, Retardation, Hosp. v.Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO, 692 A.2d 318, 323 n. 12 (R.I. 1997) (noting, in dicta, that arbitrators are generally not required to provide reasons for their awards) . No case has been brought to the Court's attention applying this rule to a labor arbitration involving a large group of employees, and where the rationale and basis for the remedy cannot be gleaned from the arbitrator's decision. In addition, it is important to note that the purpose of the rule laid out in the Westminster decision is to promote certain policies — such as economy and giving effect to the parties' choice to submit to arbitration — not to allow arbitrators to escape all review by obfuscating their rationale.
Cases in which the Supreme Court has applied the rule laid out inWestminster are distinguishable from this matter. Those cases were commercial arbitrations in which the remedy aspect of an award could be easily correlated with the arbitrator's reasoning in the decision on the merits. In such a context, the basis or rationale for the remedy is readily apparent or reasonably ascertainable upon review by the Court. In this matter, the basis or rationale for the arbitrator's February 3, 2004 Award is neither apparent nor reasonably ascertainable. This Court believes that, under the circumstances of this case, accepting the February 3, 2004 remedy award "as is" renders this Court's (albeit limited) review meaningless and illusory.
This Court finds the remedy award cannot withstand even the limited judicial scrutiny permitted in arbitration matters. Irrational is defined as "not endowed with reason or understanding; lacking usual or normal mental clarity or coherence; not governed by or according to reason."Merriam Webster's Collegiate Dictionary, (10th ed. 1993). The arbitrator's failure to provide even a modicum of analysis, rationale or reasoning for a remedy intended to cover sixty-six individuals who were not similarly situated for compensation purposes, and awarding monetary compensation for 127 overtime opportunities, compels this Court to conclude that the remedy award is clearly irrational.
In addition, the absence of any meaningful correlation of the remedy award to the Collective Bargaining Agreement's overtime provision and evidence in the record, where the number of grievants and the number of overtime opportunities was vigorously contested by the State, leads to the inescapable conclusion that the arbitrator imperfectly exercised his power to fashion a mutual, final and definite remedy award. See §28-9-18(a). With respect to the February 3, 2004 Award, then, the State's Motion to Vacate is granted.
 CONCLUSION
After careful review of the record, the Court finds that the Union's grievance was arbitrable because the assignment of overtime duty was governed by provisions of the Collective Bargaining Agreement, the dispute did not concern an "employment requirement," enforcement of the contract was not contrary to state law or public policy, and §42-11-21(d)(2) did not provide for a nondelegable duty. Therefore, the arbitrator did not exceed his authority in hearing this grievance. In addition, the July 8, 2003 Award in the Union's favor neither exceeded the arbitrator's authority nor was irrational. The State's Motion to Vacate the July 8, 2002 Award is therefore denied, and the Union's Motion to Confirm the award is hereby granted.
Because the Court finds the February 3, 2004 Award of compensation to be irrational, the State's Motion to Vacate that Award is granted, and the Union's Motion to Confirm denied. Pursuant to § 10-3-13,[3] the issues addressed by the arbitrator at the December 16, 2003 hearing relating to the calculation of compensation and the identification of those entitled to recover are remanded to the arbitrator for proceedings consistent with this decision. Counsel shall submit appropriate orders for entry in accordance with this decision.
[1] The statute provides:
 "In order to ensure continuity of the functions provided by sheriffs and marshals, the actual transfer of functions or any part of those functions may be postponed by the director until such time as the director deems appropriate; provided, however, the transfer of functions shall be completed within three (3) years." Section 42-11-21(d)(2).
[2] A hearing officer of the Department of Administration denied the grievance on October 28, 2002, finding no violation of the CBA because the three years the department had to implement changes associated with the merger had not yet expired.
[3] "Where an award is vacated, and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators." Section 10-3-13.