## GELFUSO AND LACHUT, INC.

v.

## MARY'S ITALIAN RESTAURANT, INC., et al.

### No. 2004–244–Appeal.

Supreme Court of Rhode Island.

April 11, 2006.

Joseph Daigle, Warwick.

Harris Weiner, Providence.

### O R D E R

A dispute over legal fees between a law firm and its former clients brings this matter before the Court. Gelfuso and Lachut, Inc., a law firm in Cranston, appeals a Superior Court order confirming an arbitration award. In February 2003, Alan Gelfuso, a principal with the firm, undertook the legal representation of Mary's Italian Restaurant, Inc., and Mary's Haversham Inn, Inc., as well as members of the Antoch family, who were the primary shareholders of these businesses (collectively the Antochs),[1] all in connection with the sale of Mary's Italian Restaurant (Mary's) to minority shareholders, Robert and Mary Lucey.[2] The Antochs' relationship with the Luceys had deteriorated from strained to hostile, and Robert Lucey apparently had engineered a change to the bylaws that enabled him to control the

business. The Antochs feared that Lucey would plunge them into protracted litigation or force the business into receivership.

When the Antochs engaged the law firm, they entered into a fee agreement that included both hourly compensation and a 25 percent contingency fee if the restaurant were sold for more than $900,000. Gelfuso helped the Antochs regain control of the business and he attempted to negotiate a sale of their interest in Mary's to the Luceys.

But despite his success in helping the Antochs regain control of Mary's, Gelfuso's own relationship with the Antochs became strained. On May 22, 2003, he sent them an e-mail with the heading "Termination of Services," saying in the text that, "I feel this firm can no longer continue represent [sic] your interest relating to Mary and Robert Lucey." Later, on June 27, 2003, the Antochs executed a purchase and sale agreement transferring their interest in Mary's to the Luceys for $1.5 million. The law firm then filed suit against the Antochs, claiming that its fee agreement with them entitled it to a 25 percent contingency bonus based on sale proceeds in excess of $900,000, or $150,000.[3]

Gelfuso's dispute with the Antochs ultimately found its way to arbitration. After each party had presented its case to an arbitrator, the law firm was awarded approximately $33,000.[4] Significantly, how-

---

1. The Antoch group is composed of Mary Antoch, Louis Antoch, Henry Antoch, Paula Antoch, and Sandra Blivan.

2. It appears from the record that the Luceys' interest was held only in Mary Lucey's name.

3. The law firm's total claim, including contingency fees, costs, and interest was approximately $220,000.

4. This total was based on the difference between Gelfuso's usual hourly rate of $325 and the $175 rate he was paid by the Antochs.

Apparently the lower rate had been agreed to with the understanding that Gelfuso also would be compensated by the contingency fee. The arbitrator based his award on the higher hourly rate because he struck the contingency fee as unreasonable. The total award also reflected costs arising from Gelfuso's efforts to collect outstanding attorney's fees and fees arising from his defense of a counterclaim filed by the Antochs.

ever, the arbitrator determined that it was not entitled to the $150,000 contingency fee. His decision was based on his findings that: (1) the $150,000 fee was unreasonable; (2) Gelfuso terminated the attorney-client relationship before Mary's was sold; (3) Gelfuso's negotiations with the buyers never produced a binding, written offer; and (4) the only proposal for sale that Gelfuso negotiated did not exceed the $900,000 amount required to trigger the contingency fee provision.[5]

Unhappy with the arbitrator's award, Gelfuso and Lachut filed a motion with the Superior Court on February 26, 2004, seeking to confirm the award in part, vacate the award in part, and modify the award in part. The motion justice confirmed the award, and the law firm timely appealed. The parties appeared before this Court for oral argument on March 6, 2006, pursuant to an order directing them to show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments and examining the record and the memoranda, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

Gelfuso and Lachut contends that the Superior Court should have granted its motions regarding the arbitration award because the "undisputed" evidence shows that the contingency fee was reasonable, and the arbitrator's award was a "manifest disregard" of the contract provisions in the attorney's fee agreement with the Antochs. The law firm also argues that it was the Antochs, and not Gelfuso, who terminated the attorney-client relationship. It further maintains that because of Gelfuso's efforts,

the Antochs were able to sell their interest in Mary's for $1.5 million, and that the Antochs strategically discharged him prior to closing the deal in an effort to avoid paying the contingency portion of his legal fee, to which they previously had agreed.

This Court has said on numerous occasions that "judicial review of an arbitration award is limited." *State v. Rhode Island Employment Security Alliance, Local 401, SEIU, AFL–CIO,* 840 A.2d 1093, 1096 (R.I. 2003). Statutory grounds for vacating or modifying an arbitration award are set forth in G.L.1956 § 10–3–12 ("Grounds for vacating an award") and § 10–3–14 ("Modification or correction of award"). In addition to these narrow statutory grounds, "an arbitration award may be overturned if the award was irrational or if the arbitrator manifestly disregarded the law." *Carlsten v. Oscar Gruss & Son, Inc.,* 853 A.2d 1191, 1195 (R.I.2004) (quoting *Purvis Systems, Inc. v. American Systems Corp.,* 788 A.2d 1112, 1115 (R.I.2002)).

A party who challenges an arbitration award "has the burden of demonstrating that the arbitrator has exceeded his powers sufficient to warrant setting aside the award." *Ricci v. Marandola,* 800 A.2d 401, 404 (R.I.2002). However, if an award "is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." *Carlsten,* 853 A.2d at 1195 (quoting *Purvis Systems, Inc.,* 788 A.2d at 1115).

Based on our review of the record and the arbitrator's written decision, we are of the opinion that the law firm has not demonstrated that the arbitrator exceeded his authority, acted irrationally, or manifestly disregarded the law. Gelfuso alleges that his negotiations with the Luceys yielded a

---

**5.** The arbitrator concluded that the sale proposal negotiated by Gelfuso was less than that amount because it included assets that the

Antochs did not intend to include in calculating a sale price.

favorable offer, and that the Antochs terminated him as a ploy to avoid paying a contingency fee. But these allegations are conclusory, unsupported by the record, and insufficient to overturn the arbitrator's award. We observe that on May 22, 2003, Gelfuso sent an e-mail to the Antochs indicating that he no longer wished to represent them. This message was sent before the Antochs had a binding offer from the Luceys. It was therefore reasonable, and certainly "passably plausible," for the arbitrator to conclude that under the terms of the contract, Gelfuso and Lachut was not entitled to any further fees derived from the sale of Mary's.

For the reasons set forth herein, we affirm the judgment of the Superior Court, to which we remand the papers in this case.